STATE OF CONNECTICUT *v.* DAVEY L. BERUBE, SR.
(SC 16425)

Sullivan, C. J., and Norcott, Katz, Palmer and Zarella, Js.

Argued March 22—officially released July 17, 2001

*Pamala J. Favreau,* for the appellant (defendant).

*Bruce Lockwood,* assistant state's attorney, with whom, on the brief, were *Mark S. Solak,* state's attorney, *Vincent Dooley,* senior assistant state's attorney, and *Robin S. Schwartz,* former special deputy assistant state's attorney, for the appellee (state).

*Opinion*

NORCOTT, J. The defendant, Davey L. Berube, Sr., appeals[1] from the judgment of conviction, following a jury trial, of charges stemming from two separate informations. In the first case, the defendant was convicted of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1),[2] and risk of injury to a child in violation of General Statutes (Rev. to 1997) § 53-21.[3] In the second case, the defendant was convicted of assault in the third degree in violation of General Statutes § 53a-61 (a) (1),[4] and risk of injury to a

---

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

[2] General Statutes § 53a-73a (a) provides in relevant part: "A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is (A) under fifteen years of age, or (B) mentally defective or mentally incapacitated to the extent that he is unable to consent to such sexual contact, or (C) physically helpless, or (D) less than eighteen years old and the actor is such person's guardian or otherwise responsible for the general supervision of such person's welfare, or (E) in custody of law or detained in a hospital or other institution and the actor has supervisory or disciplinary authority over such other person . . . ."

[3] General Statutes (Rev. to 1997) § 53-21 provides: "Injury or risk of injury to, or impairing morals of, children. Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child, or (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child, shall be guilty of a class C felony."

[4] General Statutes § 53a-61 provides: "(a) A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another

child in violation of § 53-21. On appeal, the defendant claims that the trial court improperly: (1) failed to sever the cases for trial; (2) permitted the state to impeach the defendant with evidence of his postarrest silence; (3) precluded the defendant from eliciting testimony related to the decision of the department of children and families (department) to place the defendant's biological child in his custody; and (4) denied the defendant's motion for a continuance and failed to recognize his right of allocution prior to imposing the sentences at the sentencing hearing. We affirm the judgment of the trial court.

The following facts are relevant to our disposition of this appeal. This appeal involves two cases that were tried together. The first case involves the defendant's alleged sexual assault of his stepdaughter, Jane Doe,[5] beginning in May or June, 1997. Jane, then thirteen years old, eventually complained to her mother, T.B., that the defendant was touching her in an inappropriate manner. Pursuant to Jane's allegations, on September 7, 1997, T.B. brought her to state police Troop D barracks to file a complaint. Trooper Thomas Clark took written statements from both Jane and T.B., and, in accordance with procedure, notified the department. Thereafter, T.B. obtained a restraining order to remove the defendant from the family home. The department conducted its investigation simultaneously with the

person, he causes such injury to such person or to a third person; or (2) he recklessly causes serious physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon, a dangerous instrument or an electronic defense weapon.

"(b) Assault in the third degree is a class A misdemeanor and any person found guilty under subdivision (3) of subsection (a) of this section shall be sentenced to a term of imprisonment of one year which may not be suspended or reduced."

[5] In accordance with General Statutes § 54-86e, and in order to protect the victims' legitimate privacy interests, the victims' names are not used in this opinion. Rather, the defendant's stepdaughter will be referred to as Jane Doe and the defendant's stepson will be referred to as John Doe.

state police. Kathleen Payne, a department investigator, met with both Jane and the defendant. Despite Jane's continued allegations, the defendant denied any wrongdoing and claimed that he accidently could have touched Jane's breasts while wrestling with her. Payne concluded that allegations of sexual abuse had been substantiated and sent a letter to T.B. reiterating the need to protect her children. The department, thereafter, closed its file in November, 1997.

The second case involves the defendant's alleged physical assault of his stepson, John Doe, on or about September 4, 1997. A few days after the incident, John, then eleven years old, complained of back pain to his grandmother. Upon lifting his shirt, John's grandmother noticed bruises and notified John's mother, T.B. After observing the bruises on John's back, T.B. took him to state police Troop D barracks to file a complaint on September 7, 1997. Clark observed the bruises and had photographs taken to document John's condition. Clark took written statements from both John and T.B., and, subsequently, notified the department of the incident. On behalf of the department, Payne met with both John and the defendant. The defendant informed Payne that he went to spank John on his buttocks, but that John moved causing the defendant to miss and strike John in the back. Payne concluded that the allegations of physical abuse had been substantiated and sent a letter to T.B. reiterating the need to protect her children. The department, thereafter, closed its file in November, 1997.

On December 2, 1997, the defendant was arrested on two separate warrants related to these allegations. The state filed two substitute informations on May 19, 1999, and the defendant, subsequently, was tried on both sets of charges before a single jury. On June 25, 1999, the jury returned a verdict of guilty on each count charged within the informations. On September 21, 1999, the

court, *Potter, J.*, imposed a total effective sentence of five years imprisonment, execution suspended after two years, and five years probation. This appeal followed.

I

The defendant's first claim is that the trial court improperly failed to sever the two cases for trial. Specifically, the defendant claims that joinder of the two cases prejudiced him because: (1) the jury likely relied on evidence presented in one case to convict him in the other; (2) the totality of the accumulated evidence at trial "demonized" him; and (3) he was prevented from exercising his fifth amendment right not to testify because he wanted to testify in one case, but not in the other. Because the defendant failed to raise the severance issue at trial, we are not bound to review this claim on appeal. See *State* v. *King*, 235 Conn. 402, 405 n.3, 665 A.2d 897 (1995) (failure to raise issue of severance at trial renders claim unreviewable); *State* v. *Groomes*, 232 Conn. 455, 465, 656 A.2d 646 (1995) (same).

In declining to review this claim, "we reassert the fundamental principle that, if the defendant deems an action of the trial court necessary to the fairness of his trial, he has a responsibility to present such a claim clearly to the trial court so that the trial court may consider it and, if it is meritorious, take appropriate action. That is the basis for the requirement that ordinarily a defendant must raise in the trial court the issues that he intends to raise on appeal." *State* v. *Groomes*, supra, 232 Conn. 466.

The defendant's silence, when faced with the prospect of a joint trial, may have been for tactical or other valid reasons. See *State* v. *Walton*, 227 Conn. 32, 55 n.20, 630 A.2d 990 (1993). For example, a joint trial may have provided the defendant with the opportunity to

demonstrate an attempt by his former wife, T.B., to turn both children against the defendant by manipulating them into believing that innocent acts were actually inappropriate.[6] See, e.g., *United States* v. *Romero*, 54 F.3d 56, 59–60 (2d Cir. 1995), cert. denied, 517 U.S. 1149, 116 S. Ct. 1449, 134 L. Ed. 2d 568 (1996) (counsel did not pursue severance for tactical reasons); *United States* v. *Jackson*, 33 F.3d 866, 875–76 (7th Cir. 1994), cert. denied, 514 U.S. 1005, 115 S. Ct. 1316, 131 L. Ed. 2d 197 (1995) (court presumed that failure to seek severance was tactical decision); *United States* v. *Cyprian*, 23 F.3d 1189, 1194 (7th Cir.), cert. denied, 513 U.S. 879, 115 S. Ct. 211, 130 L. Ed. 2d 139 (1994) (counsel did not pursue severance for tactical reasons). Thus, to consider the defendant's claim on appeal would be to "impose an untenable burden on the trial court and would amount to appeal by ambuscade." *State* v. *Groomes*, supra, 232 Conn. 466. We decline to do so.

Having failed to raise the issue of severance at trial, and because the record contains no indication that such failure was not based on tactical reasons, the defendant waived any constitutional claims he may have had with respect to the joinder of the cases. See *State* v. *Anderson*, 209 Conn. 622, 633, 553 A.2d 589 (1989) ("defendant cannot now claim 'foul' because of the admission of evidence which he allowed in for tactical purposes"); *State* v. *Harman*, 198 Conn. 124, 136, 502 A.2d 381 (1985) ("[h]aving expressly consented, for tactical reasons, to allow the state's psychiatrist to reveal information he received during the examination, the defendant waived any constitutional claims he may have had with respect to this testimony and may not now challenge

---

[6] There is evidence to support the contention that the defendant made a tactical decision to use the joint trials as a means to pursue this exact theory of defense. At trial, the defendant called several witnesses who portrayed T.B. as abusive or an alcoholic, and the defendant as nonviolent. The defendant further testified that he often had to protect himself and the children from T.B.'s physically abusive behavior.

its admissibility on appeal"); *State* v. *Moye*, 177 Conn. 487, 499, 418 A.2d 870 (1979) ("defendant's tactical use of [testimony] amounted to a waiver of any constitutional objection"); *State* v. *Green*, 62 Conn. App. 217, 231, 774 A.2d 157 (2001) (claim that constitutional right to confrontation was violated does not satisfy second prong of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 [1989], because defendant made tactical decision not to cross-examine witness on particular issue); *State* v. *Fisher*, 52 Conn. App. 825, 830, 729 A.2d 229, cert. denied, 249 Conn. 912, 733 A.2d 232 (1999) ("defendant cannot now complain that he was deprived of his constitutional rights because his trial tactic failed").[7]

## II

The defendant's second claim is that the trial court violated his state and federal constitutional rights by improperly permitting the state to impeach him with

---

[7] We are unpersuaded by the defendant's attempt to bring this claim under the mantle of *State* v. *Golding*, supra, 213 Conn. 239–40. We note that there is no affirmative duty on the trial court to order separate trials. *State* v. *Haskins*, 188 Conn. 432, 450, 450 A.2d 828 (1982). Even when raised, the decision to grant or deny severance is within the sound discretion of the trial court and will not be disturbed on appeal absent manifest abuse. *State* v. *Chance*, 236 Conn. 31, 42, 671 A.2d 323 (1996). Thus, under the circumstances of the present case, where the defendant did not move for severance, we can see nothing constitutional about the defendant's claim that the trial court improperly failed, sua sponte, to sever the cases for trial. See *State* v. *Walton*, supra, 227 Conn. 55 n.20. "Patently nonconstitutional claims that are unpreserved at trial do not warrant special consideration simply because they bear a constitutional label." *State* v. *Golding*, supra, 240.

The defendant also claims that he should prevail under the plain error doctrine. "[P]lain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Kulmac*, 230 Conn. 43, 77, 644 A.2d 887 (1994); *State* v. *Boles*, 223 Conn. 535, 551, 613 A.2d 770 (1992); *State* v. *Wright*, 207 Conn. 276, 288–89, 542 A.2d 299 (1988); *State* v. *Miller*, 202 Conn. 463, 469, 522 A.2d 249 (1987). We conclude that in this case, the trial court did not commit plain error by failing to sever, sua sponte, the cases for trial. See *State* v. *Groomes*, supra, 232 Conn. 467.

evidence of his postarrest silence and request for an attorney. See *Doyle* v. *Ohio*, 426 U.S. 610, 619, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976); *State* v. *Daugaard*, 231 Conn. 195, 210–11, 647 A.2d 342 (1994), cert. denied, 513 U.S. 1099, 115 S. Ct. 770, 130 L. Ed. 2d 666 (1995). This contention concerns two inquiries by the state during its cross-examination of the defendant regarding his claimed cooperation with the state police and the department. The defendant failed to raise this issue at trial and now seeks to prevail on this unpreserved claim under *State* v. *Golding*, supra, 213 Conn. 239–40. We conclude that the record is insufficient for review with respect to the claim involving the police, and we reject the defendant's argument with respect to the claim involving the department.

A

During the state's cross-examination of the defendant, he volunteered that he had attempted to speak with the police, but that they had refused to take a statement from him without his attorney. Upon further inquiry, the defendant explained that he had informed his attorney of his offer to speak with the police and that his attorney had told him not to say anything unless he was present. The defendant also stated that he had presumed that his attorney would set up a meeting with the police, but that he never did. The defendant argues that the cross-examination violated his right to remain silent because the questioning revealed that he had chosen to remain silent after his arrest and receipt of *Miranda* warnings.

"Ordinarily, evidence of a defendant's postarrest and post-*Miranda* silence is constitutionally impermissible under the due process clause of the fourteenth amendment. *Doyle* v. *Ohio*, [supra, 426 U.S. 610]. A *Doyle* violation also encompasses a prosecutor's comment upon a defendant's statement requesting an attorney.

*State* v. *Hull*, 210 Conn. 481, 489, 556 A.2d 154 (1989). With respect to post-*Miranda* warning . . . silence does not mean only muteness; it includes the statement of a desire to remain silent, as well as of a desire to remain silent until an attorney has been consulted." (Internal quotation marks omitted.) *State* v. *Daugaard*, supra, 231 Conn. 210–11.

Contrary to the defendant's argument, the record is not clear whether his conversations with the police transpired after or *before* his arrest or receipt of *Miranda* warnings.[8] It is essential to know the timing of these conversations because the "use at trial of silence *prior* to the receipt of *Miranda* warnings does not violate due process. *Fletcher* v. *Weir*, 455 U.S. 603, 102 S. Ct. 1309, 71 L. Ed. 2d 490 (1982) . . . ." (Citations omitted; emphasis in original.) *State* v. *Plourde*, 208 Conn. 455, 466, 545 A.2d 1071 (1988), cert. denied, 488 U.S. 1034, 109 S. Ct. 847, 102 L. Ed. 2d 979 (1989). Because the record does not indicate whether *Miranda* warnings were given before the defendant's conversations with the police took place, the record is inadequate for review under *Golding.*

The defendant, however, claims that his receipt of *Miranda* warnings may be inferred because he was in custody at the time he telephoned his attorney. His reliance on *State* v. *Cook*, 174 Conn. 73, 381 A.2d 563 (1977), for this proposition is misplaced. In *Cook*, this court held that it was not essential for the record to disclose at what point or whether *Miranda* warnings were given to a defendant when his postarrest silence is the subject of inquiry. Id., 76. We subsequently have

---

[8] A review of the record actually suggests that the defendant's conversations with police took place *prior* to his arrest and receipt of *Miranda* warnings. The assistant state's attorney questioned the defendant as follows:

"Q. Isn't it a fact, sir, that Trooper Clark attempted to contact you numerous times to have you come in?

"A. I called him and I asked him if my attorney could be present."

modified that holding in *State* v. *Leecan*, 198 Conn. 517, 525, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986). In *State* v. *Leecan*, supra, 524–25, we adopted the holding of the United States Supreme Court in *Fletcher* v. *Weir*, supra, 455 U.S. 607, that "the absence of any indication in the record that the silence of a defendant had been preceded by a *Miranda* warning rendered *Doyle* inapplicable, even though the inquiry of the prosecutor pertained to the time of arrest." Thus, we will not infer that the defendant received *Miranda* warnings prior to his conversations with the police.

### B

During his cross-examination by the state, the defendant testified that he was a battered spouse without a remedy or a means to protect the children. In response, the state asked the defendant about seeking the department's assistance while it investigated the allegations against him. The defendant proceeded to testify that he did not trust the department because they were not objective. He further explained that, although he had told the department that he did not want to speak with anyone without his lawyer present, he actually did speak with Payne alone. The defendant now argues that the state's inquiry was improper because his rights to remain silent and be represented by counsel with respect to the criminal investigation also were applicable to the department's investigation.

"*Miranda* warnings inform a person of his right to remain silent and assure him, at least implicitly, that his silence will not be used against him." (Internal quotation marks omitted.) *Wainwright* v. *Greenfield*, 474 U.S. 284, 291, 106 S. Ct. 634, 88 L. Ed. 2d 623 (1986). "As such, silence following *Miranda* warnings is 'insolubly ambiguous' because it may constitute a reliance upon those rights rather than a tacit admission that the

accused has an insufficient defense or explanation for his conduct." *State* v. *Talton*, 197 Conn. 280, 295, 497 A.2d 35 (1985). Thus, "*Doyle* bars the use against a criminal defendant of silence maintained after receipt of governmental assurances." (Internal quotation marks omitted.) *Wainwright* v. *Greenfield*, supra, 291.

In the present case, however, there is no evidence that the defendant received *Miranda* warnings with respect to the departmental investigation. "The point of the *Doyle* holding is that it is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony." Id., 292. Here, it is not clear that the defendant received government assurances upon which to rely. "Because it is the *Miranda* warning itself that carries with it the promise of protection, the United States Supreme Court has concluded that the prosecution's use of silence prior to the receipt of *Miranda* warnings does not violate due process. *Fletcher* v. *Weir*, [supra, 455 U.S. 603] (postarrest silence); *Jenkins* v. *Anderson*, 447 U.S. 231, 100 S. Ct. 2124, 65 L. Ed. 2d 86 (1980) (prearrest silence)." *State* v. *Esposito*, 223 Conn. 299, 319, 613 A.2d 242 (1992). Once again, in the absence of any such evidence, there can be no *Doyle* violation. The defendant would have this court adopt a practice that would make *any* silence inadmissible in a criminal proceeding, a position far beyond that mandated by *Doyle*. See *Doyle* v. *Ohio*, supra, 426 U.S. 615 (holding that it is fundamentally unfair to promise arrested person that his silence will not be used against him and thereafter to breach that promise); see also *Fletcher* v. *Weir*, supra, 607 (use at trial of silence prior to receipt of *Miranda* warnings does not violate due process); *Jenkins* v. *Anderson*, supra, 240 (same); *State* v. *Montgomery*, 254 Conn. 694, 713, 759 A.2d 995 (2000) (same); *State* v. *Plourde*, supra, 208 Conn. 465–66 (same). We decline

to do so. Accordingly, we conclude that the defendant's rights were not violated.

## III

The defendant's third claim is that the trial court improperly: (1) precluded the defendant from inquiring about the department's decision to place his biological child in his custody after the victims had made their allegations of abuse; and (2) refused to conduct an in camera review of his biological son's department file. The state argues that the trial court properly determined that the department's decision to place the defendant's biological child in his custody was not relevant to the issue of whether the defendant had abused his stepchildren. The state further contends that the defendant did not make a showing sufficient to obtain an in camera inspection based on due process grounds. We agree with the state on both accounts.

## A

At trial, the defendant sought to elicit testimony from a department social worker explaining that the department had placed the defendant's biological child in his custody after the allegations by Jane Doe and John Doe had arisen. In doing so, the defendant attempted to demonstrate that the department has high standards with respect to the safety and welfare of children and that the department, therefore, would not have placed his biological child in the defendant's custody if he were a danger to the child. The state objected to this line of questioning on the grounds of relevance. In sustaining the objection, the court explained that the jurors "know that this young child is with his father and they know the father is charged with risk of injury and other charges. They can draw their own inferences from the fact that the child is with the father. But, I don't think we should talk about standards of proof as it would

apply to a child who is not even the subject of [the allegations]."

"As a threshold matter, we set forth the standard by which we review the trial court's determinations concerning the exclusion of evidence. The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) *State* v. *Billie*, 250 Conn. 172, 180, 738 A.2d 586 (1999); see also *State* v. *Coleman*, 241 Conn. 784, 789, 699 A.2d 91 (1997); *State* v. *Wright*, 58 Conn. App. 136, 148, 752 A.2d 1147, cert. denied, 254 Conn. 907, 755 A.2d 884 (2000).

We find nothing in the record that persuades us to conclude that the trial court abused its discretion in determining that testimony related to the placement of his biological child with the defendant, after the allegations arose, was irrelevant to the issue of whether he abused his stepchildren. We, therefore, reject the defendant's argument that the trial court improperly excluded the evidence.[9]

## B

The defendant next claims that he had a due process right under the fourteenth amendment to the United States constitution to an in camera inspection of a confidential department file[10] in order to determine whether

---

[9] We note that the court did not preclude the defendant from introducing proper character evidence. The defendant called several witnesses for this purpose, all of whom testified that the defendant had a reputation for being a nonviolent and caring father.

[10] General Statutes § 17a-28 provides in relevant part: "(b) . . . [R]ecords maintained by the department shall be confidential and shall not be disclosed. Such records of any person may only be disclosed . . . as provided in this section. . . .

"(*l*) Information disclosed from a person's record shall not be disclosed further without written consent of the person, except if disclosed to a party or his counsel pursuant to an order of a court in which a criminal prosecution

exculpatory information existed.[11] Although we agree that due process requires that a defendant be entitled to an in camera review of confidential department files in some instances, we conclude that there is nothing in the record to indicate that the defendant in this case met the requisite threshold that would require a court to undertake such a review.

The defendant relies on *Pennsylvania* v. *Ritchie*, 480 U.S. 39, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987), for his claim that he was entitled to an in camera review. In *Ritchie*, the defendant was charged with rape, involuntary deviate sexual intercourse, incest and corruption of a minor, resulting from allegations made by his thirteen year old daughter. Id., 43. The victim reported the incidents to the police, who in turn referred her to a state agency, children and youth services. Id. During pretrial discovery, the defendant served the agency with a subpoena to gain access to the victim's confidential file. Id. The trial judge denied the request and the defendant was convicted on all counts. Id., 45. On appeal, the United States Supreme Court held that, under a due process analysis, the defendant was "entitled to have the [agency] file reviewed by the trial court to determine whether it contains information that *probably* would have changed the outcome of his trial." (Emphasis added.) Id., 58.

---

or an abuse, neglect, commitment or termination proceeding against the party is pending. . . ."

[11] There is some debate as to whether the record was actually preserved on this issue. The state claims that the defendant never requested that the court conduct an in camera review of the department's file, but instead, raises that issue for the first time on appeal. The state argues, therefore, that because no *Golding* review was requested, the claim should not be reviewed by this court. As the defendant notes, however, the trial transcript does indicate that the defendant explicitly raised *Pennsylvania* v. *Ritchie*, 480 U.S. 39, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987), the seminal case involving due process violations as they relate to in camera inspections of confidential juvenile files. Accordingly, we find this reference sufficient to warrant review of the merits of this claim.

The defendant also cites *State* v. *Leduc*, 40 Conn. App. 233, 670 A.2d 1309 (1996), for support. In *Leduc*, the defendant was charged with sexual assault of his daughter. Id., 235. At trial, the defendant requested an in camera inspection of confidential department files, which he believed to contain exculpatory evidence. The trial court denied the request and the defendant ultimately was convicted. Id., 240. The Appellate Court, citing *Ritchie*, concluded that the defendant had made a showing sufficient under due process standards to warrant an in camera inspection. Id., 248. The Appellate Court explained that "the defendant must at least make some plausible statement of how the information would be both material and favorable to his defense." Id. Accordingly, the case was remanded for an in camera inspection of relevant files. Id., 250.

There is nothing in the record in the present case to indicate that the trial court improperly refused to conduct an in camera inspection. Unlike in *Ritchie* and *Leduc*, the department file that is the subject of the requested in camera inspection here does not involve "the same incident that forms the basis of [the defendant's] criminal charges." Id., 244. Rather, the defendant sought inspection of the department's file on his biological child, even though the criminal allegations stem from acts involving the stepchildren.[12] Having determined that the biological child's file is irrelevant to the question of whether the defendant had abused his

---

[12] In his appellate brief, the defendant claims that he was entitled to question the department social worker about, and have an in camera inspection of, the department records concerning his biological child as well as Jane Doe and John Doe. Our review of the record, however, reveals that the defendant did not inquire at trial about the department files of Jane Doe and John Doe. The entire discussion regarding access to records and relevant testimony was with regard to the defendant's biological child. Thus, the claims involving Jane Doe and John Doe were not preserved and the defendant does not claim to prevail under *Golding*. Accordingly, we decline to review this issue as it pertains to the victims.

stepchildren, the court denied the claim.[13] The defendant, "of course, may not require the trial court to search through the [department] file without first establishing a basis for his claim that it contains material evidence." *Pennsylvania* v. *Ritchie*, supra, 480 U.S. 58 n.15. The defendant failed to make such a showing and, therefore, we reject his claim that he was entitled to an in camera inspection of his biological child's confidential file.

IV

The defendant's final claim alleges that the trial court: (1) incorrectly denied his motion for a continuance; and (2) failed to recognize his right of allocution prior to the imposition of his sentence. We conclude that the trial court did not abuse its discretion in denying the motion for a continuance and that the defendant's right of allocution was not violated.

A

After the jury returned a guilty verdict, the court ordered a presentence investigation with alternate incarceration program assessment to be conducted by the office of adult probation. Both cases were, therefore, continued until August 27, 1999. On August 26, 1999, the defendant filed a motion for a continuance, which was granted until September 21, 1999. On September 20, 1999, the defendant filed another motion requesting a continuance for sentencing, which was denied. The defendant now claims that the court should have granted the continuance because the presentence investigation report referenced a psychiatric examina-

[13] In response to the defendant's claim under *Ritchie*, the court explained that it is ."going to rule against you . . . because you did not establish a threshold . . . to convince the court that these records, as they apply to [the biological child], are relevant to the issues here."

tion of him that had not been made available to him pursuant to Practice Book §§ 43-7[14] and 43-10 (1).[15]

"The determination of whether to grant a request for a continuance is within the discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion. . . . A reviewing court is bound by the principle that [e]very reasonable presumption in favor of the proper exercise of the trial court's discretion will be made. . . . To prove an abuse of discretion, an appellant must show that the trial court's denial of a request for a continuance was arbitrary. . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, *particularly in the reasons presented to the trial judge at the time the request is denied.*" (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Hamilton,* 228 Conn. 234, 239–40, 636 A.2d 760 (1994).

[11] Practice Book § 43-7 provides: "The presentence investigation or alternate incarceration assessment report or both shall be provided to the judicial authority, and copies thereof shall be provided to the prosecuting authority and to the defendant or his or her counsel in sufficient time for them to prepare adequately for the sentencing hearing, and in any event, no less than twenty-four hours prior to the date of the sentencing. Upon request of the defendant, the sentencing hearing shall be continued for a reasonable time if the judicial authority finds that the defendant or his or her counsel did not receive the presentence investigation or alternate incarceration assessment report or both within such time."

[15] Practice Book § 43-10 provides in relevant part: "Before imposing a sentence or making any other disposition after the acceptance of a plea of guilty or nolo contendere or upon a verdict or finding of guilty, the judicial authority shall, upon the date previously determined for sentencing, conduct a sentencing hearing as follows:

"(1) The judicial authority shall afford the parties an opportunity to be heard and, in its discretion, to present evidence on any matter relevant to the disposition, and to explain or controvert the presentence investigation report, the alternate incarceration assessment report or any other document relied upon by the judicial authority in imposing sentence. . . ."

Contrary to the defendant's arguments on appeal, neither the motion he filed, nor his arguments before the trial court regarding the motion indicated that the purpose of the continuance was to enable the defense to obtain a copy of the psychiatric report now in question.[16] Rather, the defendant argued that he needed more time and that his due process rights were violated because the report was unfavorable toward him.[17] In response to the defendant's argument, the court noted that it sounded as if the defendant was attempting to retry the cases. The court explained: "I'm prepared to listen to argument regarding any claim[ed] deficiencies that appear in the presentence investigation. Whether those are factual or mistakes as a matter of law—but I'm not prepared to grant a continuance so that these argument[s] may be further developed." The defendant failed to argue any deficiencies regarding the presentence investigation report during discussion of the con-

[16] The motion filed with the trial court claimed that the presentence report had "grave deficiencies," but neglected to explain adequately what those deficiencies entailed. During his argument before the court, the defendant explained: "I also have filed a motion for a continuance. In all honest[y], Your Honor, that's basically part of habeas practice. . . . [W]here continuances should be filed if there's any benefit to be gained by the defendant in developing more facts . . . ."

[17] During discussion of the motion for a continuance, the following colloquy took place:

"The Court: [W]hy are you seeking a continuance, again?

"[Defense Counsel]: Basically, there's a number of other items. I've been on trial for two weeks—a period of half days. You know, it wasn't complete days of trial but prior to this date I've been in another trial.

"The Court: But this case was continued . . . from a date late in August . . . [t]o allow you to respond. . . . It is now September 21st. . . . [W]hat is [it] that you feel you must develop and have not been able to develop?

"[Defense Counsel]: Specifically, Your Honor, I believe adult probation did not view the totality of the evidence. And they did not consult with either the defendant or myself as to what we had to say on his comments as to his demeanor or anything else—and—I also believe that we have a right, under the due process clause of cases that were handed down by the [United States] Supreme Court, that the sentencing, a probation report has to reflect some due process component. And our contention is that the report appear[s]—is very one-sided."

tinuance, and the court, therefore, denied the request. The court's reasons for denying the continuance were not arbitrary, but rather reflect a sound decision to prevent the defendant from retrying issues underlying his guilt. Our examination of the record reveals nothing that would cause us to conclude that the trial court abused its discretion, particularly in light of "the reasons presented to the trial judge at the time the request [was] denied." (Internal quotation marks omitted.) *State* v. *Hamilton*, supra, 228 Conn. 240.

## B

The defendant's final claim is that his case should be remanded for resentencing because the trial court failed to recognize his right of allocution prior to the imposition of his sentence. We disagree.

The rules of practice require that the judicial authority, before imposing a sentence, "allow the defendant a reasonable opportunity to make a personal statement in his or her own behalf and to present any information in mitigation of the sentence." Practice Book § 43-10 (3). Failure to provide the defendant with such an opportunity generally requires resentencing. See *State* v. *Strickland*, 243 Conn. 339, 354, 703 A.2d 109 (1997).

In *United States* v. *Margiotti*, 85 F.3d 100 (2d Cir. 1996), the United States Court of Appeals for the Second Circuit addressed the identical issue with which we are faced. In that case, the judge announced a sentence prior to giving the defendant an opportunity to speak as mandated by the Federal Rules of Criminal Procedure.[18] Id., 101. The judge, having realized his lapse, offered the defendant the right of allocution. Id., 102.

---

[18] Rule 32 (c) (3) of the Federal Rules of Criminal Procedure provides in relevant part: "Before imposing sentence, the court must . . . (C) address the defendant personally and determine whether the defendant wishes to make a statement and to present any information in mitigation of the sentence . . . ."

After the defendant spoke, the judge explained that he had considered the defendant's statements, but chose to adhere to the previously announced sentence and explained his reasons for doing so. Id.

In a per curiam decision, the Court of Appeals explained that "[b]y affording the defendant an opportunity to address the court and reconsidering the sentence just announced, the district judge cured his earlier mistake and complied fully with the requirements of [the rule]." Id., 103; see also *United States* v. *Cruz*, 172 F.3d 921 (D.C. Cir. 1998), United States Court of Appeals, Docket No. 97-3181 (D.C. Cir., July 31, 1998) (holding United States District Court sufficiently complied with rule 32 of the Federal Rules of Criminal Procedure when court gave consideration to defendant's allocution prior to adjournment of sentencing proceeding and responded with reasons for adhering to previously announced sentence); *United States* v. *Barnes*, 948 F.2d 325, 331 n.5 (7th Cir. 1991) ("[A] trial judge, realizing after sentencing that the right of allocution has been neglected, may rectify the situation by, in effect, setting aside the sentence, reopening the proceeding, and inviting the defendant to speak. . . . [T]he trial court must genuinely reconsider the sentence in light of the elicited statement." [Citations omitted.]). The Court of Appeals concluded: "To decide in these circumstances that a judgment ought to be vacated and the case be remanded for resentencing would be tantamount to ruling that a district judge cannot correct an inadvertent and harmless mistake made in the course of a sentencing hearing. There is no reason to adopt so inflexible a rule. . . . Where, as here, the technical violation of an applicable rule was promptly corrected and caused no harm, it cannot be said that there was a denial of justice." *United States* v. *Margiotti*, supra, 85 F.3d 103.

At the sentencing hearing in the present case, the court imposed the defendant's sentence following argu-

ments by the state and the defendant's counsel. After the court announced the sentence, the defense counsel notified the court that the defendant wished to exercise his right of allocution. The court granted the defendant's request and permitted him to make a statement. The court, after having listened to the defendant's remarks, declined to change the sentence. Specifically, the court explained: "I will note your comments. For the record, I would have recognized you earlier had your counsel brought it to my attention. . . . But nevertheless, I do feel that the sentence that the court has just imposed is appropriate under all of the circumstances. These two young kids have been traumatized, according to this report—and it's genuine. Both are in tough shape. I'm not going to change the sentence."

We conclude that the defendant's right of allocution was not violated. The record clearly indicates that the court considered the defendant's comments and demonstrated reasons for adhering to the originally imposed sentence. By affording the defendant the opportunity to speak and reconsidering the sentence with those remarks in mind, the "judge cured his earlier mistake and complied fully with the requirements of [the rule]." *United States* v. *Margiotti*, supra, 85 F.3d 103.[19]

The judgment is affirmed.

In this opinion the other justices concurred.

---

[19] Our conclusion in this case that the defendant's right of allocution was not violated should not be read to suggest that it is the defendant's responsibility to notify the trial court of such a request.