## DAVEY B.[1] *v.* COMMISSIONER OF CORRECTION (AC 29456)

Flynn, C. J., and Robinson and Berdon, Js.

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued February 6—officially released June 9, 2009

*John R. Williams,* for the appellant (petitioner).

*Denise B. Smoker,* senior assistant state's attorney, with whom, on the brief, were *Patricia M. Froehlich,* state's attorney, and *Erika L. Brookman,* deputy assistant state's attorney, for the appellee (respondent).

*Opinion*

ROBINSON, J. The petitioner appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. Following the denial, the court granted certification to appeal to this court. On appeal, the petitioner claims that the court improperly (1) placed the burden on him to prove the absence of a tactical reason for counsel's trial deficiencies and (2) held that the petitioner's testimony could not be accepted without independent corroboration. We affirm the judgment of the habeas court.

The facts and procedural history underlying the petitioner's appeal were recounted in the decision of our Supreme Court disposing of his direct appeal. "[The present matter] involves two cases that were tried

together. The first case involves the [petitioner's] alleged sexual assault of his stepdaughter, Jane Doe, beginning in May or June, 1997. Jane, then thirteen years old, eventually complained to her mother, T.B., that the [petitioner] was touching her in an inappropriate manner. Pursuant to Jane's allegations, on September 7, 1997, T.B. brought her to state police Troop D barracks to file a complaint. Trooper Thomas Clark took written statements from both Jane and T.B., and, in accordance with procedure, notified the department [of children and families (department)]. Thereafter, T.B. obtained a restraining order to remove the [petitioner] from the family home. The department conducted its investigation simultaneously with the state police. Kathleen Payne, a department investigator, met with both Jane and the [petitioner]. Despite Jane's continued allegations, the [petitioner] denied any wrongdoing and claimed that he accidentally could have touched Jane's breasts while wrestling with her. Payne concluded that allegations of sexual abuse had been substantiated and sent a letter to T.B. reiterating the need to protect her children. The department, thereafter, closed its file in November, 1997.

"The second case involves the [petitioner's] alleged physical assault of his stepson, John Doe, on or about September 4, 1997. A few days after the incident, John, then eleven years old, complained of back pain to his grandmother. Upon lifting his shirt, John's grandmother noticed bruises and notified John's mother, T.B. After observing the bruises on John's back, T.B. took him to state police Troop D barracks to file a complaint on September 7, 1997. Clark observed the bruises and had photographs taken to document John's condition. Clark took written statements from both John and T.B., and, subsequently, notified the department of the incident. On behalf of the department, Payne met with both John and the [petitioner]. The [petitioner] informed Payne

that he went to spank John on his buttocks, but that John moved causing the [petitioner] to miss and strike John in the back. Payne concluded that the allegations of physical abuse had been substantiated and sent a letter to T.B. reiterating the need to protect her children. The department, thereafter, closed its file in November, 1997.

"On December 2, 1997, the [petitioner] was arrested on two separate warrants related to these allegations. The state filed two substitute informations on May 19, 1999, and the [petitioner], subsequently, was tried on both sets of charges before a single jury. On June 25, 1999, the jury returned a verdict of guilty on each count charged within the informations. On September 21, 1999, the court, *Potter, J.*, imposed a total effective sentence of five years imprisonment, execution suspended after two years, and five years probation." *State v. [Davey B.]*, 256 Conn. 742, 745–47, 775 A.2d 966 (2001). The convictions were affirmed by our Supreme Court on July 17, 2001. Id., 745.

On September 13, 2004, the petitioner filed a petition for a writ of habeas corpus alleging that his trial counsel, Robert McCoy, rendered ineffective assistance of counsel. He alleges that McCoy's representation was ineffective in two ways: first, by failing to object to the joinder of the two separate informations for trial; second, for failing to object and to preserve a claim arising from the state's impeachment of the petitioner's testimony with evidence of the petitioner's postarrest silence.

Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. "In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective

assistance of counsel is plenary. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Necaise* v. *Commissioner of Correction*, 112 Conn. App. 817, 820, 964 A.2d 562 (2009). With these principles in mind, we now begin a discussion of the petitioner's claims.

I

The petitioner first claims that the court improperly placed the burden of proof on him to prove the absence of a tactical reason for his trial counsel's deficient performance. It is his contention that it was the state's burden in the underlying habeas action to demonstrate that the failure of the petitioner's trial counsel to object to the joint trial was a tactical decision. We disagree.

"In *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction. . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . .

"The first part of the *Strickland* analysis requires the petitioner to establish that . . . counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." (Internal quotation marks

omitted.) *Necaise* v. *Commissioner of Correction,* supra, 112 Conn. App. 821. "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, *the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.*" (Emphasis added; internal quotation marks omitted.) *Bryant* v. *Commissioner of Correction,* 290 Conn. 502, 512–13, 964 A.2d 1186 (2009), quoting *Strickland* v. *Washington,* supra, 466 U.S. 689.

Here, the petitioner's argument that the state has the burden of proof to establish that his trial counsel made a tactical decision is in direct contradiction of well established authority and, accordingly, is without merit. The court properly placed the burden on the petitioner to prove his *Strickland* claim.

II

The petitioner next claims that the court improperly concluded that his habeas testimony could not be accepted without independent corroboration.

The following additional facts are relevant to our review of the petitioner's claim. On direct appeal to our Supreme Court, the petitioner alleged that the trial court

improperly permitted the state to impeach his testimony with evidence of his postarrest silence. *State* v. [*Davey B.*], supra, 256 Conn. 749–50. Specifically, he argued that "the cross-examination violated his right to remain silent because the questioning revealed that he had chosen to remain silent after his arrest and receipt of *Miranda*[2] warnings." Id., 750. After reviewing this claim, the court made this conclusion: "Contrary to the [petitioner's] argument, the record is not clear whether his conversations with the police transpired after or *before* his arrest or receipt of *Miranda* warnings. It is essential to know the timing of these conversations because the use at trial of silence *prior* to the receipt of *Miranda* warnings does not violate due process. . . . Because the record does not indicate whether *Miranda* warnings were given before the [petitioner's] conversations with the police took place, the record is inadequate for review under [*State* v. *Golding*, 213 Conn. 239–40, 567 A.2d 823 (1989)]." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. [*Davey B.*], supra, 751.

Thereafter, in his petition for a writ of habeas corpus, the petitioner alleged that he had received ineffective assistance of counsel arising, in part, from McCoy's failure to object to the impeachment and to preserve an adequate record for review of this claim. At the habeas proceeding, the petitioner testified to establish the timing of his conversations with the police. No additional evidence on this issue was presented.[3]

In the memorandum of decision, the court made the following determination. "[T]he petitioner claims that

---

[2] See *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[3] The petitioner submitted seven exhibits in support of his petition, including: (1) the exhibit packet for the underlying joint trial, (2) the appellate court record, (3) the supplemental record, (4) his appellate brief, (5) the state's appellate brief, (6) his appellate reply brief and (7) a copy of the decision in *State* v. [*Davey B.*], supra, 256 Conn. 742.

trial counsel was ineffective because McCoy failed to object . . . to his silence and request for the advice of counsel. It is virtually impossible for this court to address these claims because McCoy did not testify at the habeas corpus trial. This court has been presented with the thorny task of adjudicating an ineffective assistance of counsel claim by reviewing virtually the identical record presented to the Supreme Court, albeit supplemented now by petitioner's minimal testimony. Simply put, there is no credible evidence shedding any light onto McCoy's trial strategy, the tactics he employed to effectuate that strategy and whether McCoy's representation fell below the standard this court must apply to determine whether his performance was deficient." The court acknowledged that the petitioner had testified as to the timing of his conversations with the police; however, it concluded that the testimony was self-serving and unsupported by credible proof.

The determination of whether McCoy rendered ineffective assistance of counsel through his failure to object and to preserve an adequate record for appellate review is dependent on whether there was merit to the petitioner's impeachment claim. As noted by our Supreme Court in *Davey B.*, the timing of the petitioner's conversations with the police is an essential element of this claim because the use at trial of silence prior to the receipt of *Miranda* warnings does not violate due process. *State* v. [*Davey B.*], supra, 256 Conn. 751. The only evidence presented at the habeas proceeding regarding the timing issue was through the testimony of the petitioner, and the court, as the trier of fact, is "the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Necaise* v. *Commissioner of Correction*, supra, 112 Conn. App. 820. Here, the court concluded that the petitioner's self-serving testimony,

without the benefit of corroborating evidence, was not credible. This determination properly is within the purview of the fact finder; accordingly, the petitioner's claim is without merit.

The judgment is affirmed.

In this opinion the other judges concurred.