******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* KEVIN BARD
# (SC 21016)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander, Dannehy and Bright, Js.

*Syllabus*

Convicted of one count each of murder and criminal violation of a standing criminal protective order, and three counts of criminal violation of a protective order, the defendant appealed to this court. The charges were tried together, and the defendant did not move to server the murder charge from the protective order violation charges. At trial, the defendant admitted to killing the victim but claimed that he had lacked the requisite intent to commit murder due to extreme intoxication and irrational feelings of anger at the time of the killing. While this appeal was pending, the trial court issued an articulation of the reasons why it did not exercise its discretion, pursuant to the rule of practice (§ 41-18) governing severance of offenses, to order severance of the murder charge from the protective order violation charges. On appeal, the defendant claimed that the trial court had abused its discretion in failing to recognize that it had the discretionary authority under Practice Book § 41-18 to order, sua sponte, severance of the murder charge from the protective order violation charges. *Held*:

Insofar as the defendant failed to move for severance in the trial court, his claim that the trial court had abused its discretion in failing to recognize that it had the authority to order severance sua sponte under Practice Book § 41-18 was unpreserved and, therefore, not reviewable.

This court was not persuaded by the defendant's contention that his claim was preserved inasmuch as the trial court's articulation constituted a ruling on the issue of that court's authority to sever the charges sua sponte, as a motion for articulation may not be utilized to preserve for appeal an issue that was not raised in the trial court.

Moreover, even if the defendant's claim had been preserved, there was no merit to his contention that the trial court's decision not to order severance was based solely on its belief that, in the absence of a proper motion for severance, it did not have the authority to order severance sua sponte, as it was clear that the court's primary reasons for not ordering severance were its determinations that the charge offenses were of the same character and that evidence of the murder and protective order violations would have been cross admissible if those offenses had been tried separately.

Furthermore, although the trial court also cited the defendant's failure to move for severance and to make a showing of substantial prejudice as additional reasons for its decision not to order severance sua sponte, this court did not view those reasons as evidence of the court's belief that it lacked authority to raise the issue of severance sua sponte but, rather, served to reinforce the

trial court's conclusion that trying the murder charge and protective order violation charges together in the present case was not prejudicial.

Argued March 5—officially released May 5, 2026

*Procedural History*

Substitute information charging the defendant with the crimes of murder and criminal violation of a standing criminal protective order, and with three counts of the crime of criminal violation of a protective order, brought to the Superior Court in the judicial district of New Britain and tried to the jury before *Pelosi, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed*.

*Gary A. Mastronardi*, for the appellant (defendant).

*Nicholas L. Scarlett*, deputy assistant state's attorney, with whom, on the brief, was *Christian M. Watson*, state's attorney, for the appellee (state).

*Opinion*

ALEXANDER, J. A jury found the defendant, Kevin Bard, guilty of murder in violation of General Statutes § 53a-54a, criminal violation of a standing criminal protective order in violation of General Statutes § 53a-223a, and three counts of criminal violation of a protective order in violation of General Statutes § 53a-223. The trial court rendered judgment in accordance with the jury's verdict and sentenced the defendant to a total effective term of seventy years of imprisonment. On appeal, the defendant claims that the trial court abused its discretion in failing to recognize that it had authority under Practice Book § 41-18[1] to order, sua sponte, severance of the murder charge from the protective order violation charges. We affirm the judgment of the trial court.

The following facts are relevant to our resolution of this appeal. On December 13, 2020, the defendant killed

[1] Practice Book § 41-18 provides: "If it appears that a defendant is prejudiced by a joinder of offenses, the judicial authority may, upon its own motion or the motion of the defendant, order separate trials of the counts or provide whatever other relief justice may require."

the victim,[2] with whom he had been in a long-term romantic relationship, by slitting her throat with a six inch Buck knife. Immediately after killing her, the defendant called numerous friends and family members to confess to the crime. In one call, the defendant informed his sister that she would "never . . . hear from [the victim] again [because he had just] cut her motherfucking throat." When his sister asked him why he had killed the victim, the defendant replied, "[b]ecause she never shuts her . . . mouth." The defendant similarly informed the police when they arrived at the crime scene that the victim was "fucking dead," that he had "cut her," and that she "deserved it" because she "[didn't] shut her mouth." Several days later, while being held in pretrial detention, the defendant called his brother and told him that, although he had consumed five or six shots of alcohol before killing the victim, "it was more rage than alcohol" that caused him to do it.

The defendant was charged in a single information with murder, criminal violation of a standing criminal protective order, and three counts of criminal violation of a protective order. The defendant never moved to sever the murder charge from the protective order violation charges. At trial, the defendant admitted to killing the victim but claimed that he had lacked the requisite intent to commit murder due to his extreme intoxication and "irrational feelings of anger" at the time of the killing. During closing argument, defense counsel argued that the jury should find the defendant guilty of the lesser included offense of manslaughter in the first degree in addition to the four protective order violation charges. The jury was unpersuaded and found the defendant guilty on all counts. This direct appeal followed. See General Statutes § 51-199 (b) (3).

While his appeal was pending, the defendant filed a motion with the trial court seeking articulation of "the

---

[2] In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2024); we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

specific reason[s] why the trial court did not exercise its discretion under . . . [Practice Book] §41-18 . . . to order severance of the murder count from the [four separate protective order violation] counts" and, "[i]f, at the time of trial, the court did not believe that it had the discretion . . . under [Practice Book] §41-18 . . . to order severance of the counts . . . the legal and factual bases for such conclusion." In support of the motion for articulation, the defendant argued that, "[e]xcept for the fact that the murder case and the protective order cases all involved the same female victim, the cases were not of the same character in that the underlying facts and circumstances [on] which each protective order case was based materially differed from, and were wholly unrelated to, the underlying facts and circumstances of the murder case." (Internal quotation marks omitted.)

The trial court granted the motion for articulation. In its articulation, the court, quoting *State* v. *Labarge*, 164 Conn. App. 296, 304, 134 A.3d 259, cert. denied, 321 Conn. 915, 136 A.3d 646 (2016), noted that "[t]he decision to sever cases for trial is within the sound discretion of the trial court" and that this discretion "should be exercised only when a joint trial will be substantially prejudicial to the rights of the defendant . . . ." (Internal quotation marks omitted.) The court indicated that the defendant's motion incorrectly assumed that the state had joined separate and distinct courses of criminal conduct in a single information when, in fact, "the information charged the [defendant] with one count of murder . . . three counts of [criminal] violation of a protective order . . . and one count of [criminal] violation of a standing [criminal] protective order . . . all arising out of conduct that occurred on December 13, 2020." Citing *State* v. *Petteway*, Docket No. KNL-CR-18-342995, 2022 WL 2297867 (Conn. Super. June 22, 2022), the court observed that, in similar cases, other courts routinely have declined to sever murder charges from violation of protective order charges. The court further stated that the defendant "did not file a motion to sever . . . [or] meet his burden of showing that the offenses joined in the state's information [were] not of the same character, either during the proceedings [in] the trial court or in

the motion for articulation. The [defendant] also never made a showing of substantial prejudice.''

The defendant's sole claim on appeal is that ''the trial court abused its discretion in failing to recognize that it possessed the discretionary authority under [Practice Book § 41-18] to consider severance on its own motion . . . .'' (Citation omitted; emphasis omitted; internal quotation marks omitted.) The defendant argues that, although the court did not expressly say so in its articulation, it ''intimated that it did not order severance at the time of trial because the defendant never moved for severance and never made any of the showings [that a defendant is required to make] in order to warrant severance under [General Statutes] § 54-57 and [Practice Book] § 41-18. . . . Those requirements, however, apply to a defendant only when that defendant actually moves for severance. They do not . . . limit a trial court's independent authority to consider, sua sponte, a severance of counts . . . when a defendant fails to move for severance.'' (Citation omitted; emphasis omitted.)

The state responds that the defendant's failure to move for severance in the trial court renders his claim unpreserved and, therefore, unreviewable.[3] It further contends that, under well established precedent, a motion for articulation may not be utilized to preserve an issue for appeal that was not previously raised in the trial court. We agree with the state.

''It is well settled that [o]ur case law and rules of practice generally limit [an appellate] court's review to issues that are distinctly raised at trial, and [o]nly in [the] most exceptional circumstances can and will [an appellate] court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court.'' (Internal quotation marks omitted.) *State* v. *Bolton*, 352 Conn. 477, 499, 337 A.3d 1114 (2025); see also Practice

---

[3] The defendant does not argue that his claim is of constitutional magnitude and, therefore, reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015), or seek review under the plain error doctrine. See *State* v. *Berube*, 256 Conn. 742, 749 n.7, 775 A.2d 966 (2001).

Book §60-5 ("[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial").

Consistent with the foregoing precedent, this court repeatedly has held that a defendant's failure to raise the issue of severance in the trial court renders any claim with respect thereto unreviewable. See, e.g., *State* v. *Berube*, 256 Conn. 742, 747, 775 A.2d 966 (2001); *State* v. *King*, 235 Conn. 402, 405 n.3, 665 A.2d 897 (1995); *State* v. *Groomes*, 232 Conn. 455, 465–66, 656 A.2d 646 (1995). We have likewise held that a trial court is under no obligation to raise the issue of severance sua sponte, despite its authority to do so. See, e.g., *State* v. *Berube*, supra, 749 n.7 ("[T]here is no affirmative duty on the trial court to order separate trials. . . . Even when raised, the decision to grant or deny severance is within the sound discretion of the trial court and will not be disturbed on appeal absent manifest abuse." (Citation omitted.); see also *State* v. *Colon*, 232 Conn. App. 122, 131–32, 335 A.3d 848 (rejecting claim that trial court had obligation to sever offenses sua sponte and observing that "[t]he law is just the opposite"), cert. denied, 353 Conn. 902, 341 A.3d 959 (2025).

We are not persuaded by the defendant's contention that his claim is preserved because "[t]he trial court's articulation constituted a ruling on a trial issue defining the scope of the judge's sua sponte authority to act pursuant to [Practice Book] §41-18, and, once the trial court's articulation issued, it immediately became subject to review by this court." Indeed, our case law is to the contrary. See, e.g. *State* v. *Brunetti*, 279 Conn. 39, 59 n.33, 901 A.2d 1 (2006) ("A motion for articulation is not proper if the movant seeks articulation with respect to an issue that was not raised in the trial court. See Practice Book §66-5 (articulation appropriate when further facts are necessary for proper presentation, on appeal, of 'the issues raised' in trial court) . . . ." (Citation omitted.)), cert. denied, 549 U.S. 1212, 127 S. Ct, 1328, 167 L. Ed. 2d 85 (2007); *Brandy* v. *Commissioner of Correction*, 89 Conn. App. 387, 394 n.6, 873 A.2d 1061 (2005) ("a

motion for articulation is not the proper forum for raising new claims").

Even if the defendant's claim was preserved, there is no merit in his contention that "[the trial court's] decision not to sever sua sponte was based solely [on] a belief that, [in the absence of] a proper severance motion, with requisite showings provided by the defense in support of severance, the trial court simply did not have the authority to grant, or even consider, a severance of charges 'on its own motion.' " The trial court's articulation contradicts this contention.

The trial court began its articulation by quoting the language of Practice Book § 41-18, which unambiguously provides that, "[i]f it appears that a defendant is prejudiced by a joinder of offenses, the judicial authority may, *upon its own motion or the motion of the defendant*, order separate trials of the counts or provide whatever other relief justice may require." (Emphasis added.) Nothing that the court stated thereafter in the articulation supports the view that the plain and unmistakable meaning of § 41-18 was lost on the court.

It is clear, rather, that the trial court's main reasons for declining to raise the issue of severance sua sponte was the court's determination that the charged offenses were of the same character; see General Statutes § 54-57 ("[w]henever two or more cases are pending at the same time against the same party in the same court for offenses of the same character, counts for such offenses may be joined in one information unless the court orders otherwise"); and because evidence of the charged offenses would have been cross admissible if the cases had been tried separately. See, e.g., *State* v. *Crenshaw*, 313 Conn. 69, 84, 95 A.3d 1113 (2014) ("[w]e consistently have found joinder to be proper if we have concluded that the evidence of other crimes or uncharged misconduct would have been cross admissible at separate trials" (internal quotation marks omitted)). "[When] evidence of one incident can be admitted at the trial of the other [incident], separate trials would provide the defendant [with] no significant benefit. . . . [U]nder such circumstances, the defendant would not ordinarily be substantially

prejudiced by joinder of the offenses for a single trial." (Internal quotation marks omitted.) Id., 83–84.

The trial court's citation to *State* v. *Petteway*, supra, 2022 WL 2297867, removes any doubt as to its reasoning with respect to this issue. In *Petteway*, a case directly on point, the court denied the defendant's motion to sever a murder charge from a violation of a standing criminal protective order charge on the basis of its determination that "evidence of the violation of a protective order would be admissible as to the murder charge to establish the defendant's malice toward the victim"; id., *2, citing *State* v. *Lopez*, 280 Conn. 779, 795, 911 A.2d 1099 (2007), and *State* v. *Dillard*, 132 Conn. App. 414, 428–29, 31 A.3d 880 (2011), cert. denied, 303 Conn. 932, 36 A.3d 694 (2012); and because evidence of the murder would be admissible to establish the violation of the protective order. *State* v. *Petteway*, supra, 2022 WL 2297867, *2. The court in *Petteway* concluded: "The evidence is cross admissible, in other words, relevant and material to each case, and the probative value of such evidence outweighs any prejudicial effect." Id.

In the present case, although the trial court also cited the defendant's failure to move for severance and to make a showing of substantial prejudice as additional reasons for why it had declined to order severance on its own motion, we do not view this as evidence of the court's belief that it lacked authority to raise the issue on its own motion. These additional reasons simply served to reinforce the court's determination that the joinder of charges in this case was not prejudicial.

The judgment is affirmed.

In this opinion the other justices concurred.