# STATE OF CONNECTICUT *v.* WILLIAM S. MADORE
## (AC 26153)

Bishop, Gruendel and West, Js.

Argued February 21—officially released June 27, 2006

*Kirstin B. Coffin,* special public defender, for the appellant (defendant).

*Melissa Streeto Brechlin,* assistant state's attorney, with whom, on the brief, were *Thomas Griffin,* supervisory assistant state's attorney, and *David J. Smith,* assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, William S. Madore, appeals from the judgment of conviction, rendered after a jury trial, of one count of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1) and two counts of delivering liquor to a minor in violation of General Statutes § 30-86. The defendant claims that the court improperly granted the state's motion to consolidate his case with that of his brother, Roland G. Madore.[1] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 10, 2001, the victim, F,[2] was fifteen years of age. F and her sixteen year old sister, H, lived with their family in Taftville. On the evening of August 10, 2001, F walked with her best friend, L, also fifteen

---

[1] The defendant also challenges the trial court's denial of his motion for a judgment of acquittal as to counts seven and eight of the state's information, which charged him with sexual assault in the second degree and risk of injury to a child in violation of General Statutes § 53-21 (a) (2), respectively. Because the jury found the defendant not guilty of these charges, we need not address this claim.

[2] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

years old, to the home of the defendant. The defendant, who was twenty-five at the time, resided with his twenty-seven year old brother, Roland Madore, their younger brother and their mother. F testified that when she and L arrived at the defendant's home, Roland Madore let them in, and they followed him to his bedroom where they all drank Smirnoff Ice, watched television and talked. After about fifteen minutes, F left the bedroom to use the bathroom. Upon returning from the bathroom, F entered the defendant's bedroom to talk to him, where he provided her with more Smirnoff Ice.

F's sister, H, and H's friend, A, arrived at the defendant's house looking for F. Roland Madore let them in, and they followed him to his bedroom where they talked with him and L for a while. H had seen her sister, F, in the defendant's bedroom, sitting on his bed drinking Smirnoff Ice and talking. The second time H checked on her sister, she was kissing the defendant. The third time, H saw the defendant on his bed, lying on his back. His pants and underwear were pushed down around his knees. F was sitting on top of his pelvic area moving up and down. F's dress was pushed up around her waist and her underwear was on the floor. H opened the door and asked what they were doing. The defendant responded, "What the hell does it look like we're doing? Get the . . . out of my room!" H closed the door, returned to Roland Madore's bedroom, and told the others that she had just seen F and the defendant having sex. At that point, H and A left the house.

L testified that, prior to August 10, 2001, she had been friends with both Madore brothers and had been to their house many times. L stated that between June and August, 2001, she had sex with the defendant four or five times. L testified that she also saw F having sex with the defendant on August 10, 2001. She looked into the defendant's room and saw the defendant lying on his back and F was sitting on top of him, dressed only

from the waist up, moving up and down. L did not say anything, but instead closed the bedroom door and returned to Roland Madore's bedroom.

F testified that when she finished having sex with the defendant, she got dressed and returned to Roland Madore's bedroom where L was waiting for her. L stated that she and Roland Madore had just finished having sex. Within ten minutes or so, F and L left the house.

In connection with the events of August 10, 2001, the state charged the defendant with sexual assault in the second degree in violation of § 53a-71 (a) (1), risk of injury to a child in violation of General Statutes § 53-21 (a) (2), two counts of delivery of liquor to a minor in violation of § 30-86, and two counts of risk of injury to a child in violation of § 53-21 (a) (1).[3]

The state charged Roland Madore with sexual assault in the second degree in violation of § 53a-71 (a) (1) and risk of injury to a child in violation of § 53-21 (a) (2), alleging that he had had sex with L on August 10, 2001.

The brothers were tried together on their respective charges. The defendant was convicted of one count of sexual assault in the second degree and two counts of delivery of liquor to a minor. The jury found the defendant not guilty of all remaining charges.[4] The defendant received a total effective sentence of ten years incarceration, execution suspended after six years, followed by twenty years probation. This appeal followed.

On appeal, the defendant claims that the court abused its discretion in granting the state's motion to consolidate his case with that of his brother. Specifically, the

[3] The state also charged the defendant in counts seven and eight with sexual assault in the second degree and risk of injury to a child in connection with allegations from June 1, 2001, as to victim L. As noted, the jury found the defendant not guilty of these charges.

[4] The jury found Roland Madore guilty of sexual assault in the second degree and not guilty of risk of injury to a child.

defendant claims the two cases should not have been joined for trial because (1) he and Roland Madore were not involved in the same criminal incident and, therefore, evidence about Roland Madore's crimes would not have been admissible in a separate trial of the defendant, (2) the defendant and Roland Madore had incompatible defenses and (3) consolidation of the two cases caused juror confusion and bias. We are not persuaded.

The following additional facts are pertinent to the defendant's claims. On October 5, 2004, the court heard argument on the state's motion to consolidate the trials of the defendant and Roland Madore. The state argued that the Madore brothers should be tried together because the offenses with respect to both brothers and both victims occurred on the same date, August 10, 2001. The state represented that each victim, as well as the other state's witnesses, would testify in the trial of each brother. The state further contended that neither brother would suffer substantial prejudice or injustice, and that a joint trial served judicial economy because it would be quicker and more efficient. The defendant objected to consolidation, arguing that the counts against each brother were different and that the dates of some of the charged offenses in the defendant's case occurred on dates other than August 10, 2001. The defendant made no objection on the basis of antagonistic defenses or juror confusion or bias. The court granted the motion to consolidate.

We first set forth our standard of review of the defendant's claim. "[W]hether to consolidate or sever the trials of defendants involved in the same criminal incident lies within the sound discretion of the trial court. . . . Ordinarily justice is better subserved where parties are tried together. . . . Joint trials of persons jointly indicted or informed against are the rule, and separate trials the exception resting in the discretion of the court. . . . A separate trial will be ordered where

the defenses of the accused are antagonistic, or evidence will be introduced against one which will not be admissible against others, and it clearly appears that a joint trial will probably be prejudicial to the rights of one or more of the accused. . . . [T]he phrase prejudicial to the rights of the [accused] means something more than that a joint trial will probably be less advantageous to the accused than separate trials. . . .

"A joint trial expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice both time and money to serve upon juries, and avoids the necessity of recalling witnesses who would otherwise be called to testify only once. . . . [W]here proof of the charges against the defendants is dependent upon the same evidence and alleged acts . . . severance should not be granted except for the most cogent reasons. . . .

"The test for the trial court is whether substantial injustice is likely to result unless a separate trial be accorded. . . . [W]e will reverse a trial court's ruling on joinder only where the trial court commits an abuse of discretion that results in manifest prejudice to one or more of the defendants. . . . The discretion of the court is necessarily exercised before the trial begins and with reference to the situation as it then appears to the court. . . . Therefore, we must review the trial court's decisions . . . to deny the defendants' motion for severance based upon the evidence before the court at the time of the motions." (Citations omitted; internal quotation marks omitted.) *State* v. *Jackson*, 73 Conn. App. 338, 365–67, 808 A.2d 388, cert. denied, 262 Conn. 929, 814 A.2d 381 (2002).

"The defendant bears a heavy burden of showing that the denial of severance resulted in substantial injustice,

and that any resulting prejudice was beyond the curative power of the court's instructions. . . . [B]ecause joinder foster[s] economy and expedition of judicial administration . . . we consistently have recognized a clear presumption in favor of joinder and against severance . . . and, therefore, absent an abuse of discretion, we will not second guess the considered judgment of the trial court as to joinder or severance of two or more charges." (Citation omitted; internal quotation marks omitted.) *State* v. *Bell*, 93 Conn. App. 650, 654–55, 891 A.2d 9, cert. denied, 277 Conn. 933, 896 A.2d 101 (2006).

The defendant first claims that he was prejudiced by the consolidation because he and Roland Madore were not involved in the same criminal incident and, therefore, evidence relating to Roland Madore's crimes would not have been admissible in a separate trial on the crimes with which he was charged. This claim is belied by the fact that the brothers' crimes occurred on the same date, at the same time, in the same house and involved the same group of teenage girls. At the time the court considered the motion to consolidate, the state represented that all of its witnesses would be called to testify in each trial, and that proof of the charges against both the defendant and Roland Madore was dependent on the same evidence, witnesses and facts. Thus, it is likely that evidence of Roland Madore's actions could have been admissible in a separate trial of the defendant to assist the jury in achieving a full understanding of the events leading to and surrounding the defendant's crimes.

In objecting to the motion to consolidate, the defendant did not articulate how he would be prejudiced if the motion were granted. "[O]ur Supreme Court has stated that mere assertions are insufficient to overcome the preference for a joint trial." (Internal quotation marks omitted.) *State* v. *Jackson*, supra, 73 Conn. App.

367. Indeed, there was ample evidence to secure a conviction against the defendant without any evidence as to Roland Madore's actions. The jury heard testimony from F, who reluctantly admitted that, on August 10, 2001, the defendant provided her with alcohol and had sexual intercourse with her. F's testimony was corroborated by both H and L, who testified that they saw F having sex with the defendant.

In addition, the court instructed the jury, before the commencement of evidence and three times during its final instructions, that the charges against the two defendants had to be considered separately. "Barring contrary evidence, we must presume that juries follow the instructions given them by the trial judge." (Internal quotation marks omitted.) *State* v. *Bell*, supra, 93 Conn. App. 658. The court's curative instructions are another factor weighing in favor of the conclusion that the defendant was not prejudiced by the consolidation of the trials.

The defendant's final two claims in support of his contention that the cases should not have been consolidated are that he and Roland Madore had incompatible defenses and that consolidation of the cases caused juror confusion and bias. Because the defendant failed to raise these issues at trial, we are not bound to review them on appeal.

"This court reviews rulings solely on the ground on which the party's objection is based." (Internal quotation marks omitted.) *State* v. *Wegman*, 70 Conn. App. 171, 189 n.9, 798 A.2d 454, cert. denied, 261 Conn. 918, 806 A.2d 1058 (2002). "[W]e have consistently declined to review claims based on a ground different from that raised in the trial court . . . ." (Internal quotation marks omitted.) *State* v. *Gebhardt*, 83 Conn. App. 772, 778, 851 A.2d 391 (2004). The defendant concedes that

he did not raise these grounds in support of his objection to the consolidation. Although he did not preserve his claims, he now seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[5]

We are unpersuaded by the defendant's attempt to bring his claim under the mantle of *Golding*. We note that there is no affirmative duty on the trial court to order separate trials. *State* v. *Haskins*, 188 Conn. 432, 450, 450 A.2d 828 (1982). "Whether multiple charges should be tried separately is within the court's sound discretion and generally is not of a constitutional nature." *State* v. *Perez*, 87 Conn. App. 113, 121, 864 A.2d 52 (2004); see also *State* v. *Berube*, 256 Conn. 742, 749 n.7, 775 A.2d 966 (2001); *State* v. *Walton*, 227 Conn. 32, 55 n.20, 630 A.2d 990 (1993). Because the defendant's claim is not of constitutional magnitude, it fails to satisfy the second prong of *Golding* and, therefore, is not reviewable.

On the basis of the foregoing, we conclude that the defendant did not suffer substantial injustice by the joinder of the two cases. Accordingly, the court did not abuse its discretion in granting the state's motion to consolidate.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.