******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* MAURICE SNOWDEN
(AC 38758)

Keller, Mullins and Sullivan, Js.

*Argued November 28, 2016—officially released March 21, 2017*

(Appeal from Superior Court, judicial district of
Hartford, Mullarkey, J.)

*Richard E. Condon, Jr.*, senior assistant public
defender, with whom was *S. Max Simmons*, assigned
counsel, for the appellant (defendant).

*Harry Weller*, senior assistant state's attorney, with
whom, on the brief, were *Gail P. Hardy*, state's attor-
ney, and *Robin D. Krawczyk*, senior assistant state's
attorney, for the appellee (state).

*Opinion*

SULLIVAN, J. The defendant, Maurice Snowden, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a and criminal possession of a pistol or revolver in violation of General Statutes (Rev. to 2011) § 53a-217c (a) (1) (criminal possession). On appeal, the defendant claims that (1) the trial court erred in permitting joinder of one information charging murder with a second information charging a separate instance of criminal possession; and (2) this court should adopt a "clear failure of judicial obligation" standard for conducting a harmless error analysis under the facts of this case.[1] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts.[2] For some time preceding the murder of the victim, Michael Taylor, the defendant and the victim had been involved in an ongoing dispute. Additionally, approximately one week prior to the murder, the defendant told a lifelong friend, Everett Walker, that he wanted to kill the victim. Indeed, the victim knew that the defendant intended to harm him because he had told Walker, also a lifelong friend, that the defendant was "out to get me," and the victim was so nervous that he sat on his porch armed with knives.

Early in the morning on July 26, 2011, T.M.[3] was driving with his cousin, Desmond Wray, around the north end of Hartford selling drugs when the defendant flagged him down on Enfield Street and asked to buy crack. At first, T.M. did not recognize the defendant, whom he had known since childhood and spent time with earlier the same month, because the defendant was wearing a disguise comprised of a fake beard drawn on with a marker and a shirt over his head, as well as utilizing crutches. At the same time, the defendant engaged the victim, who was nearby, in a discussion, looking to buy marijuana from him. After the defendant crossed the street to approach the victim, the defendant shot the victim in the face, resulting in his death.

Thereafter, the defendant got into the back of T.M.'s car and told him to drive to Earle Street in Hartford. Once the defendant was in the car and began removing his disguise, T.M. recognized him as the defendant. T.M. took the defendant to Earle Street and the defendant exited the car.

At approximately 3 a.m. on July 26, 2011, the defendant arrived at the apartment of another childhood friend, Latia Avril, at 31 Owen Street in Hartford. During his visit, the defendant showed Avril a black gun, and how to open and fire it. Later that evening while the defendant was still there, police officers knocked on Avril's door to serve a warrant for the defendant's arrest for unrelated offenses. The defendant threw a .38 caliber revolver into a clothes hamper and attempted to

escape through a bedroom window, but police officers, who were waiting outside the window, apprehended him. As the police officers escorted him to their vehicle, he stated, "that gun I used it's not here, it's on Enfield Street."

Meanwhile, Avril went to the door and police officers entered the apartment. Avril indicated to police that the defendant had thrown something in a clothes hamper in a bedroom closet. In the clothes hamper, police located a .38 caliber Smith & Wesson revolver with a five round capacity, but it contained only four cartridges when retrieved.

The victim died from a single bullet wound under his left eye. Upon entry, the .38 caliber bullet shattered. The medical examiner recovered two fragments from the victim's skull. The state's ballistics expert could not make a positive match of the bullet fragments recovered from the victim to those test-fired from the revolver recovered from Avril's apartment, but one of the fragments possessed rifling characteristics consistent with that revolver. Accordingly, the expert could not eliminate or identify the weapon seized as the weapon used in the victim's murder.

On October 28, 2013, in a long form information, the state charged the defendant with murder and criminal possession in violation of the aforementioned statutes, as well as attempt to tamper with a witness in violation of General Statutes §§ 53a-151 (a) and 53a-49. The criminal possession charge arose from the defendant's possession of the revolver at Avril's apartment. Originally, the state had charged the defendant with the three offenses in three separate informations, but the state moved to join the informations on October 28, 2013, the day that jury selection began. That day, the defendant orally objected to the consolidation on the grounds that the tampering and criminal possession charges were not cross admissible in the murder case. The court granted the motion for joinder, finding that the tampering and criminal possession charges were cross admissible in the murder case and that the defendant was not prejudiced under the factors established in *State* v. *Boscarino*, 204 Conn. 714, 722–24, 529 A.2d 1260 (1987). Following a jury trial, the jury returned a verdict of guilty on the murder and criminal possession charges and not guilty on the tampering charge. The court accepted the jury's verdict and, on January 27, 2014, sentenced the defendant to fifty-four years incarceration on the murder count and five years on the criminal possession count, to be served consecutively. This appeal followed.

The defendant claims on appeal that the court erred in permitting joinder of one information charging murder with a second information charging criminal possession. Specifically, the defendant argues that the court failed to consider whether the murder allegations were

significantly more shocking and brutal than the allegations in the criminal possession case. Additionally, he asserts that the state did not attempt to meet its burden of proving that the evidence from the murder case would be admissible in a separate trial for criminal possession, or that the defendant would not be unreasonably prejudiced by the disparity in the egregiousness of the conduct supporting each charge. The state counters that the defendant did not raise this issue in his objection to the joinder of these charges, thereby either waiving or failing to preserve this claim for appeal. We agree with the state that the defendant failed to preserve his claim.

"The standards for reviewing a trial court's ruling on a motion pertaining to joinder are discussed at length in our [Supreme Court's] decisions in *State* v. *LaFleur*, 307 Conn. 115, 159, 51 A.3d 1048 (2012), and *State* v. *Payne*, 303 Conn. 538, 544–50, 34 A.3d 370 (2012). In those cases, [our Supreme Court] rejected the notion of a blanket presumption in favor of joinder . . . and clarified that, when charges are brought in separate informations, and the state seeks to join those informations for trial, the state bears the burden of proving that the defendant will not be substantially prejudiced by joinder pursuant to Practice Book § 41-19. The state may satisfy this burden by proving, by a preponderance of the evidence, either that the evidence in the cases is cross admissible or that the defendant will not be unfairly prejudiced pursuant to the factors set forth in *State* v. *Boscarino*, [supra, 204 Conn. 722–24].[4] . . . Although the state bears the burden of proof in the trial court, [i]t is the defendant's burden on appeal to show that joinder was improper by proving substantial prejudice that could not be cured by the trial court's instructions to the jury . . . . As [our Supreme Court] emphasized in *LaFleur*, our appellate standard of review remains intact. Accordingly, [i]n deciding whether to [join informations] for trial, the trial court enjoys broad discretion, which, in the absence of manifest abuse, an appellate court may not disturb." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Devon D.*, 321 Conn. 656, 664–65, 138 A.3d 849 (2016).

"It is well settled that [o]ur case law and rules of practice generally limit this court's review to issues that are distinctly raised at trial. See, e.g., *Ajadi* v. *Commissioner of Correction*, 280 Conn. 514, 550, 911 A.2d 712 (2006) (declining to consider claim not raised before habeas court); *State* v. *Fagan*, 280 Conn. 69, 85–89, 905 A.2d 1101 (2006) (declining to review claim not preserved at trial) [cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007)]; Practice Book § 60-5 (court not bound to consider claim unless distinctly raised at trial)." (Internal quotation marks omitted.) *Rowe* v. *Superior Court*, 289 Conn. 649, 660, 960 A.2d 256 (2008). We abide by "the fundamental principle

that if the defendant deems an action of the trial court necessary to the fairness of his trial, he has a responsibility to present such a claim clearly to the trial court so that the trial court may consider it and, if it is meritorious, take appropriate action. That is the basis for the requirement that ordinarily a defendant must raise in the trial court the issues that he intends to raise on appeal. *State* v. *Groomes*, 232 Conn. 455, 466, 656 A.2d 646 (1995)." (Internal quotation marks omitted.) *State* v. *Vallejo*, 102 Conn. App. 628, 633, 926 A.2d 681, cert. denied, 284 Conn. 912, 931 A.2d 934 (2007).

The following additional procedural facts reveal that the defendant did not preserve his claim challenging the joinder of informations. As previously stated, the state originally charged the defendant in three separate informations with murder, criminal possession, and tampering. The state moved to consolidate those informations and the defendant orally objected in a hearing held on the same day. The basis for the defendant's objection was that it would be confusing and misleading to the jury to combine the criminal possession case with the murder case because, he argued, there was an inadequate nexus between the revolver found in the apartment on Owen Street, the defendant, and the murder. Additionally, he contended that the firearm was recovered in a closet and not on his person, which he claimed to be of consequence because he did not live at the Owen Street address. He also argued that no evidence connected the revolver to the one used in the murder and that the time span between the events was too attenuated.[5] The state argued that even if the revolver was not the one used in the murder, it would be admissible as uncharged misconduct to show that the defendant had the means to commit the crime.

In ruling on the motion to consolidate, the court stated as follows: "Now as far as the tampering is concerned and the later in the day possession of the means . . . the *Boscarino* factors, the[y] do involve discrete easily distinguishable factual scenario[s]. The matters . . . being consolidated are not of violent nature, brutal or shocking; it's a possession and tampering. It would involve only a couple or three witnesses. It doesn't affect the duration particularly. And if what the state claims is true, and I would require them to put the evidence on in front of the court before it goes in front of the jury, it would be cross admissible under possession of the means as far as the possession of the pistol is concerned and consciousness of guilt as far as the tampering is concerned. Now I will allow the consolidation, the defense may have an exception. But I wish any of the evidence of the events at Owen Street to have more than just an oral offer of proof from the state's attorney; I would like to at least hear from the witnesses before they testify in front of the jury to make sure that the ruling can stand. Now—so that's granted."

It is clear from the record that the defendant did not raise at trial his claim now on appeal that the evidence supporting the murder charges was inadmissible in the criminal possession case. "[T]o review [a] claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) *State* v. *Randolph*, 284 Conn. 328, 374, 933 A.2d 1158 (2007), quoting *West Farms Mall, LLC* v. *West Hartford*, 279 Conn. 1, 28, 901 A.2d 649 (2006). Additionally, we presume that the trial court properly considered the legal standards applicable to a motion for joinder. *Johnson* v. *de Toledo*, 61 Conn. App. 156, 161–62, 763 A.2d 28 (2000) ("The general rule that a judgment, rendered by a court with jurisdiction, is presumed to be valid and not clearly erroneous until so demonstrated raises a presumption that the rendering court acted only after due consideration, in conformity with the law and in accordance with its duty. . . . It is important to recognize that a claim of error cannot be predicated on an assumption that the trial court acted incorrectly. . . . Rather, we are entitled to assume, unless it appears to the contrary, that the trial court . . . acted properly, including considering the applicable legal principles." [Citations omitted; internal quotation marks omitted.]), appeal dismissed, 258 Conn. 732, 785 A.2d 192 (2001). The ground for the defendant's objection to joinder before the trial court was limited to the admissibility of the evidence supporting the criminal possession charge in the murder case. On appeal, he raises a distinct claim that the evidence supporting the murder charge was unduly prejudicial and inadmissible in his criminal possession case. The defendant did not raise this claim before the trial court, and, thus, it was not properly preserved.

Moreover, at no point did the defendant move for severance after the informations were joined. See *State* v. *Berube*, 256 Conn. 742, 747–48, 775 A.2d 966 (2001) (failure to raise issue of severance at trial, with no indication failure not tactical, renders claim unreviewable). In fact, the court conditioned its joinder determination on an offer of proof from witnesses before they testified in front of the jury to ensure that the matters were cross admissible. When the court subsequently determined, however, that offer of proof was unnecessary, the defendant did not renew his objection to joinder or move to sever. At that time, he had the opportunity to raise a claim that the evidence of the murder was unduly prejudicial to him in the prosecution of the criminal possession charge, but he failed to raise any objection. Accordingly, we conclude that the defendant has failed to preserve his claim for appeal, and, therefore, his claim is not reviewable.[6] Consequently, we do not address whether the evidence in the cases was cross admissible or whether the defendant was prejudiced by the joinder under the factors enunciated

in *Boscarino*.[7]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Because we determine that the defendant's first claim is unreviewable, we do not reach his claim that this court should adopt a new standard for harmless error analysis.

[2] At trial, the parties stipulated that the defendant previously had been convicted of a felony.

[3] The court issued a protective order requiring that this witness be referred to by his initials only. In keeping with this order, we do the same.

[4] "In *Boscarino*, [our Supreme Court] identified the factors that a trial court should consider in determining whether separate trials might be necessary to avoid undue prejudice resulting from consolidation of multiple charges for trial. These factors include: (1) whether the charges involve discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred." (Internal quotation marks omitted.) *State* v. *Devon D.*, 321 Conn. 656, 665 n.5, 138 A.3d 849 (2016).

[5] The defendant also argued that it was unclear how long the firearm had been in the hamper and whether he possessed the revolver. The evidence previously set forth regarding the events at Owen Street, however, refutes these arguments. In its arguments in support of its motion to consolidate, the state summarized this evidence.

[6] The defendant does not argue that his claim, although unpreserved, is reviewable either under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015), or the plain error doctrine. According to our Supreme Court, however, a defendant need not affirmatively request *Golding* review. Instead, "to obtain review of an unpreserved claim pursuant to [*Golding*], a defendant need only raise that claim in his main brief, wherein he must present a record that is [adequate] for review and affirmatively [demonstrate] that his claim is indeed a violation of a fundamental constitutional right." (Internal quotation marks omitted.) *State* v. *Elson*, 311 Conn. 726, 754–55, 91 A.3d 862 (2014).

In his main brief, the defendant does not invoke any fundamental constitutional rights in his arguments that the trial court improperly joined his criminal cases. "Whether multiple charges should be tried separately is within the court's sound discretion and generally is not of a constitutional nature. *State* v. *Perez*, 87 Conn. App. 113, 121, 864 A.2d 52 (2005); see also *State* v. *Berube*, [supra, 256 Conn. 749 n.7]; *State* v. *Walton*, 227 Conn. 32, 55 n.20, 630 A.2d 990 (1993)." (Internal quotation marks omitted.) *State* v. *Madore*, 96 Conn. App. 235, 243, 899 A.2d 721, cert. denied, 280 Conn. 907, 907 A.2d 92 (2006). The defendant quotes *State* v. *Payne*, supra, 303 Conn. 545, for the proposition that a trial court in exercising its discretion regarding joinder must exercise such discretion "in a manner consistent with the defendant's right to a fair trial." The court in *Payne* determined, however, that despite concluding that the informations were improperly joined because the defendant's conduct in killing the victim in the felony murder case was significantly more brutal and shocking than his conduct in attempting to tamper with the jurors under the second prong of *Boscarino*, such *nonconstitutional* error was harmless. See id., 552–53.

Indeed, in his second claim on appeal the defendant in this case argues that this court should adopt a new standard for harmless error analysis of nonconstitutional claims. Accordingly, the defendant has not affirmatively demonstrated that improper joinder claims generally, or his claim in particular, implicate a violation of a fundamental constitutional right and, therefore, his first claim on appeal is not reviewable under *Golding*. See *Bank of America, N.A.* v. *Thomas*, 151 Conn. App. 790, 801 n.6, 96 A.3d 624 (2014) ("[T]he Supreme Court's decision in *Elson* did not eliminate the important requirement that all claims of error be adequately briefed on the merits. . . . If the [party's] brief fails to identify the relevant record sections, identify the governing constitutional principles, or apply law to fact in demonstrating the existence of a constitutional violation requiring reversal, then the claim likely will be deemed inadequately briefed and will fail on that ground anyway, regardless of some threshold invocation of *Golding* review prior to the briefing of the merits." [Internal quotation marks omitted.]).

We acknowledge that the defendant in his reply brief cited constitutional provisions and argued in a conclusory fashion that the trial court recognized that the motion to consolidate implicated his "constitutional right to a fair trial." Nonetheless, we abide by the principle that to obtain review under *Golding*, a defendant must raise such a claim in his main brief. *State* v. *Elson*, supra, 311 Conn. 754–55.

[7] The state argues that by failing to raise the claim made on appeal at trial, the defendant waived that claim. Because we determine that preservation is the proper way to address this issue, we also do not reach this argument.

———————————————————