******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v*. KEVIN JACKSON
(AC 38227)

Lavine, Elgo and Beach Js.

*Syllabus*

Convicted, following a trial to the court, of the crimes of assault in the first
degree and tampering with a witness, the defendant appealed to this
court. The assault charge arose out of an incident in which the defendant
stabbed the victim, and the tampering with a witness charge concerned
his conduct in sending a letter to the victim's girlfriend, W, who had
witnessed the stabbing and had identified the defendant as the perpetra-
tor. On appeal, the defendant claimed, inter alia, that the trial court
improperly denied his motion to dismiss the witness tampering charge
and restricted his recross-examination of W. *Held*:

1. The evidence was sufficient to prove the defendant's identity as the
   perpetrator of the stabbing to support his conviction of assault in the
   first degree: the defendant's claim that the state failed to prove his
   identity beyond a reasonable doubt solely rested on his challenge to
   the credibility of W's testimony, which the trial court found credible,
   the court did not credit the defendant's testimony that two other men
   stabbed the victim, and this court would not revisit the trial court's
   credibility determinations; moreover, in addition to W's testimony that
   she saw the defendant stab the victim, the state presented strong evi-
   dence identifying the defendant as the perpetrator, including evidence
   that the knife used to stab the victim was from the cutlery set found
   in the defendant's vehicle and was in the defendant's possession when
   police arrested him.

2. The evidence was sufficient to support the defendant's conviction of
   tampering with a witness arising out of his letter to W; the defendant's
   letter, in which he stated that the real perpetrator wore a mask and
   shades and asked W to say she was not sure who it was, was not
   merely providing his version of events or offering information about
   the incident, but rather attempted to induce W to falsely testify that other
   individuals stabbed the victim, contrary to her positive identification of
   the defendant as the perpetrator to both a 911 dispatch operator and
   to police at the time of his arrest.

3. The defendant could not prevail on his claim that the trial court, which
   dismissed one count of tampering with a witness, improperly denied
   his motion to dismiss both charges of tampering with a witness, which
   was based on his claim that the state violated the separation of powers
   doctrine when it added two witness tampering charges to the amended
   information without a judicial determination as to whether probable
   cause existed for the added offenses; our rules of practice permitted
   the state to file the amended information adding those charges, the
   defendant availed himself of the proper procedure to challenge the lack
   of a probable cause finding by filing a motion to dismiss, which the
   court denied, and he could not reasonably argue that probable cause
   did not exist for those charges, the court having found that the state
   proved beyond a reasonable doubt that he had tampered with a witness.

4. The record was inadequate to review the defendant's unpreserved claim,
   under *State* v. *Golding* (213 Conn. 233), that the trial court violated his
   sixth amendment right to confrontation and abused its discretion when
   it prevented him from questioning W on recross-examination about
   certain statements she had made during a 911 call; there was no indica-
   tion in the record as to what questions, if any, the defendant sought to
   ask W on recross-examination regarding her ability to describe the
   defendant's clothing that he could not have asked during cross-examina-
   tion, and the defendant's claim on appeal that his recross-examination
   was within the scope of the state's redirect-examination because it
   implicated W's ability to recall the events of the evening was not raised
   before the trial court and, therefore, was not reviewable.

Argued October 12—officially released December 26, 2017

*Procedural History*

Amended information charging the defendant with two counts each of the crimes of assault in the first degree and tampering with a witness, brought to the Superior Court in the judicial district of New Haven, where the matter was tried to the court, *B. Fischer, J.*; verdict of guilty of two counts of assault in the first degree and one count of tampering with a witness; thereafter, the court dismissed one count of assault in the first degree; judgment of guilty of assault in the first degree and tampering with a witness, from which the defendant appealed to this court. *Affirmed.*

*Peter G. Billings*, with whom, on the brief, was *Sean P. Barrett*, for the appellant (defendant).

*Elizabeth S. Tanaka*, assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *John Waddock*, former supervisory assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Kevin Jackson, appeals from the judgment of conviction, following a trial to the court, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and tampering with a witness in violation of General Statutes § 53a-151 (a). On appeal, the defendant claims that (1) the state presented insufficient evidence to sustain his conviction for those offenses, (2) the court erred when it denied his motion to dismiss two counts alleging tampering with a witness, and (3) the trial court improperly restricted his recross-examination of a witness. We are unpersuaded by each of the defendant's claims and affirm the judgment of the trial court.

The trial court's oral decision sets forth the following relevant facts. On February 10, 2014, at 135 4th Street in Hamden, the defendant stabbed Geoffrey Golding, the victim, with a knife four times; three times in his abdomen, and one time on his left elbow. The victim's wounds were serious and life threatening. The victim's girlfriend, Sammantha Wright, and their young children also lived at the residence. The defendant and the victim had been friends for a couple of years, and the defendant visited on either a monthly or bimonthly basis.

At the time of the stabbing, Wright, the victim, and the defendant were the only adults present at the residence. Although the victim did not see who stabbed him, the court found that "Wright was in the bedroom, sitting on her bed at approximately 8:20 [p.m.] when she saw the defendant stabbing [the victim] in the hallway outside her bedroom. . . . Wright was approximately ten feet away from the defendant when he was stabbing [the victim]. The court finds that her testimony is credible. The hallway was well illuminated and her bedroom was also illuminated. . . . Wright saw the faces of [the victim] and [the defendant]. . . . The defendant did not have a mask or a hoodie on at all, nothing that was concealing his face. Miss Wright was one hundred percent sure it was the defendant who was stabbing [the victim]." Wright called 911 after she saw the victim bleeding and told the 911 dispatch operator that the defendant had just stabbed the victim.

The defendant left the house after the stabbing and headed to Walmart in New Haven, where he was detained approximately ninety minutes later. Hamden police took Wright to Walmart, and she positively identified the defendant as the person who stabbed the victim. As found by the court: "He had the same clothing on that he had on during the stabbing. Also, on [the defendant's] person was the kitchen knife he used to stab the victim . . . . On the blade of the knife were blood stains that were confirmed by DNA analysis to be the blood of the victim . . . . In the defendant's car . . . he had a three piece cutlery set . . . . The knife he used was

one of the three pieces, the smaller piece from that cutlery set, that smaller knife had been removed from the packet and it was identical to the other two knives from that set, same color, same style."

The defendant testified at trial and claimed that two other men entered the home that evening. "The court does not find credible his testimony of others in the home that evening. The court does not find credible his denial of stabbing [the victim]."

"Now, [the victim], after he returned home after the surgery, he did receive a letter from the defendant . . . . He did read the letter, but he did not understand the letter. He was not intimidated or upset by the letter. Now . . . Wright also received a letter from the defendant shortly after the stabbing . . . . It was addressed to her and the letter states in part, and I quote directly from the letter, 'Sam, please tell them you are not sure who it was. They think it's me.' She was scared and upset after . . . reading the letter; she immediately called the police department after the receipt of the letter."

Police arrested the defendant at Walmart the night of the stabbing, February 10, and charged him with one count of assault in the first degree and two counts of risk of injury to a child in violation of General Statutes § 53-21. By way of an amended long form information, dated November 24, 2014, the state charged the defendant with assault in the first degree in violation of § 53a-59 (a) (1), assault in the first degree in violation of § 53a-59 (a) (3), and two counts of tampering with a witness in violation of § 53a-151 (a). The court, *B. Fischer, J.*, found the defendant not guilty of one count of tampering with a witness, but guilty as to the remaining counts. The court later dismissed the defendant's conviction for assault in the first degree in violation of § 53a-59 (a) (3), because it was charged as an alternative to assault in the first degree in violation of § 53a-59 (a) (1). The court, therefore, convicted the defendant of one count of assault in the first degree in violation of § 53a-59 (a) (1) and one count of tampering with a witness in violation of § 53a-151 (a).

On March 6, 2016, the court sentenced the defendant to a term of imprisonment of fourteen years, followed by six years special parole, on the assault in the first degree conviction and a concurrent sentence of five years of imprisonment on the tampering with a witness conviction. The defendant, therefore, received a total effective sentence of fourteen years of imprisonment, followed by six years special parole. This appeal followed. Additional facts will be set forth as necessary.

## I

We begin with the defendant's claim that the state presented insufficient evidence to sustain his convictions. With regard to his conviction for assault in the

first degree, he argues that the state failed to prove identity. As for his conviction for tampering with a witness, he argues that the state failed to prove that he attempted to influence Wright to testify falsely.[1] We disagree.

"We begin by setting forth the applicable standard of review. In [a defendant's] challenge to the sufficiency of the evidence . . . [w]hether we review the findings of a trial court or the verdict of a jury, our underlying task is the same. . . . We first review the evidence presented at trial, construing it in the light most favorable to sustaining the facts expressly found by the trial court or impliedly found by the jury. We then decide whether, upon the facts thus established and the inferences reasonably drawn therefrom, the trial court or the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. . . . In assessing the defendant's claim that the evidence against him was insufficient to establish his guilt . . . we must look to the trial court's findings of fact. . . . [W]e give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses. . . .

"In evaluating evidence that could yield contrary inferences, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier [of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier [of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier of fact's] verdict of guilty." (Citations omitted; internal quotation marks omitted.) *State* v. *Drupals*, 306 Conn. 149, 157–58, 49 A.3d 962 (2012).

A

Notwithstanding the trial court's explicit finding that Wright was credible, the defendant argues that the state failed to meet its burden of proving identity because "it was not possible for . . . Wright to see the alleged incident due to the layout of the home." The defendant argues that the state failed to prove identity beyond a reasonable doubt *solely* because Wright lacked credibility.

"It is black letter law that in any criminal prosecution, the state bears the burden of proving beyond a reasonable doubt the defendant's identity as . . . the [perpetrator] of the crime charged." *State* v. *Smith*, 280 Conn. 285, 302, 907 A.2d 73 (2006). "Furthermore, when a defendant is tried to the court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . Where there is conflicting evidence . . . we do not retry the facts or pass on the credibility of the witnesses." (Internal quotation marks omitted.) *State* v. *Van Eck*, 69 Conn. App. 482, 499, 795 A.2d 582, cert. denied, 260 Conn. 937, 802 A.2d 92, cert. denied, 261 Conn. 915, 806 A.2d 1057 (2002).

The state presented a strong case identifying the defendant as the perpetrator of the assault. Wright's testimony, which the court found credible, was that she saw the defendant stab the victim. The court also had before it evidence that police seized a knife from the defendant's person containing the victim's DNA when he was arrested at Walmart. The court found that the knife used to stab the victim was from the cutlery set found in the defendant's vehicle and was in the defendant's possession when police arrested him. The record supports these findings. See, e.g., *State* v. *Farr*, 98 Conn. App. 93, 103–104, 908 A.2d 556 (2006) (identity may be proven by circumstantial evidence). Additionally, the court did not credit the defendant's testimony that two other men entered the residence and stabbed the victim. We will not revisit the court's credibility determinations with respect to *both* Wright and the defendant. See, e.g., *State* v. *Van Eck*, supra, 69 Conn. App. 499; see also *State* v. *Kehayias*, 162 Conn. App. 310, 321, 131 A.3d 1200 (2016) (arguments challenging witness' credibility "are not the proper subject of an appeal" [internal quotation marks omitted]). Under these circumstances, the trial court could reasonably have concluded that the state proved, beyond a reasonable doubt, that *the defendant* stabbed the victim.

### B

The defendant argues that the state failed to present sufficient evidence that he attempted to induce Wright to testify falsely by sending her a letter concerning his pending charges for assault in the first degree. Specifically, he argues that the letter did not ask, request, or suggest that she testify falsely. According to the defendant, "the letter provides [his] version of events, offers information about the incident, and explains that [he] does not want any problems with [the victim] or Ms. Wright." We are unpersuaded.[2]

Section 53a-151 (a) provides: "A person is guilty of tampering with a witness if, believing that an official proceeding is pending or about to be instituted, he induces or attempts to induce a witness to testify falsely,

withhold testimony, elude legal process summoning him to testify or absent himself from any official proceeding."[3] "The language of § 53a-151 plainly warns potential perpetrators that the statute applies to *any conduct* that is intended to *prompt a witness* to testify falsely . . . in an official proceeding that the perpetrator believes to be pending or imminent. . . . A defendant is guilty of tampering with a witness if he intends that his conduct directly cause a particular witness to testify falsely . . . . So interpreted, § 53a-151 applies to conduct intentionally undertaken to undermine the veracity of testimony given by a witness. . . . The statute applies to successful as well as unsuccessful attempts to induce a witness to render false testimony." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Carolina*, 143 Conn. App. 438, 444, 69 A.3d 341, cert. denied, 310 Conn. 904, 75 A.3d 31 (2013).

Viewing the evidence in the light most favorable to sustaining the verdict, we conclude that the state presented sufficient evidence to prove, beyond a reasonable doubt, that the defendant attempted to induce Wright to testify falsely. Wright told the 911 dispatch operator that the defendant stabbed the victim and positively identified the defendant at Walmart as the perpetrator of the stabbing. The defendant's possession of a knife with the victim's blood on it further identified the defendant as the individual who stabbed the victim. In his letter to Wright, the defendant stated: "Sam, please tell them you not sure who it was. They think it's me."

The defendant began the letter by stating that "[y]ou and [the victim] know that was dead wrong" because, according to the defendant, the real perpetrator wore a "mask and shades." Wright testified that the victim, the defendant, she, and two of her young children were the only individuals at the residence when the stabbing occurred. The court did not credit the defendant's testimony that other individuals entered the home on the night of the stabbing. Accordingly, the court reasonably could have concluded that the defendant's letter attempted to induce Wright to falsely testify that other individuals stabbed the victim.[4]

On the basis of this evidence, the trial court reasonably could have concluded that the state proved, beyond a reasonable doubt, that the defendant attempted to induce Wright to falsely testify that he did not stab the victim. *State* v. *Carolina*, supra, 143 Conn. App. 444 ("[t]he defendant's conduct, i.e., writing a letter to his cousin that solicited his help in securing [the] false testimony [of his cousin's daughter], clearly is prohibited by § 53a-151"); see id. ("§ 53a-151 applies to conduct intentionally undertaken to *undermine the veracity* of testimony" [emphasis added]).[5]

II

We next address the defendant's claim that the court erred when it denied his motion to dismiss the charges of tampering with a witness. Specifically, the defendant argues that the factually distinct tampering with a witness charges required the state to first obtain a warrant to arrest him and then file a motion for joinder of the charges before the tampering charges could be consolidated for trial with his assault charges. The state simply added the tampering with a witness charges to the amended long form information and, according to the defendant, the state's failure to follow the procedure just outlined violated the separation of powers doctrine.[6] We disagree.[7]

The following procedural history is relevant. As previously noted, police arrested the defendant on February 10, 2014, without a warrant, on charges of assault in the first degree and two counts of risk of injury to a child. During a bond reduction hearing for the defendant, held on April 11, 2014, the state referenced the letters sent by the defendant to the victim and Wright, indicating that it was considering witness tampering charges. On October 29, 2014, the state indicated that it was not pursuing the risk of injury charges, but did add two additional counts of witness tampering to the long form information. The defendant pleaded not guilty to the witness tampering charges that same day.

On the first day of trial, November 21, 2014, defense counsel noted her intention to challenge the witness tampering charges "on procedural grounds," and did so on November 24, 2014, by filing a motion to dismiss pursuant to Practice Book § 41-8 (4). She argued that the witness tampering charges "have never been subjected to judicial review for a determination of probable cause." The court denied the defendant's motion on November 26, 2014. Defense counsel also argued on November 26 that the state had failed to prove its case with respect to the witness tampering charges *and* that those charges should be dismissed pursuant to Practice Book § 41-8 (5) based on a lack of probable cause.[8] The court denied both motions.[9]

"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the [state] cannot as a matter of law and fact state a cause of action that should be heard by the court . . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the trial court's ultimate legal conclusion and resulting [decision to deny] . . . the motion to dismiss will be de novo." (Internal quotation marks omitted.) *State* v. *Oral H.*, 125 Conn. App. 276, 280, 7 A.3d 444 (2010), cert. denied, 300 Conn. 902, 12 A.3d 573, cert. denied, 564 U.S. 1009, 131 S. Ct. 3003, 180 L. Ed. 2d 831 (2011).

We conclude that *State* v. *Oral H.*, supra, 125 Conn.

App. 281–82, disposes of the defendant's separation of powers claim. In that case, the defendant similarly argued that the state violated the separation of powers doctrine when it added a charge to a substitute information without a judicial determination that probable cause existed for the added offense. Id., 281. This court rejected the defendant's argument that the trial court should have dismissed the added charge, noting that our rules of practice permitted the state to file a substitute information; see Practice Book § 36-17; and the defendant could have moved to dismiss the charge. *State* v. *Oral H.*, supra, 282, citing Practice Book § 41-8 (5). This court held that "[t]he defendant did not avail himself of this procedure. . . . [and] cannot now reasonably argue that probable cause did not exist . . . . [because] the jury determined that the state proved beyond a reasonable doubt that the defendant had committed the offense." Id.

The defendant in the present case has not provided us with any reason to depart from *Oral H.*, and we are unaware of any reason to do so. Not only did the court find that the state proved beyond a reasonable doubt that the defendant had tampered with one witness, but the defendant *did* move to dismiss the charges in accordance with Practice Book § 41-8 (5) prior to the court's guilty finding. Accordingly, we reject the defendant's separation of powers claim.

III

The defendant's final claim is that the trial court improperly restricted his recross-examination of Wright. Specifically, he argues that the court violated his sixth amendment right to confrontation[10] and abused its discretion when it prevented him from questioning Wright about certain statements she made during a call to 911 dispatch. The state argues, inter alia, that the defendant's unpreserved constitutional claim is unreviewable under *Golding*[11] because the record is inadequate. We agree with the state and decline to address the defendant's unpreserved evidentiary argument.

The following additional facts and procedural history are relevant. During the state's direct examination of Wright, it played a recording of Wright's call to 911 dispatch regarding the stabbing. In that call, Wright described the clothing she saw the defendant wearing at the time he stabbed the victim. The defendant, during cross-examination, also questioned Wright about the clothing that she described in the 911 call. During his redirect-examination, the prosecutor did not ask any questions about the 911 recording. During recross-examination, the defendant attempted to revisit the 911 recording:

"[Defense Counsel]: The 911 tape that you heard.

"[Wright]: Yes.

"[Defense Counsel]: There was a part there where

the dispatcher asked what the person was wearing; do you recall that?

"[Wright]: Yes.

"[Defense Counsel]: Do you recall having—Do you recall not knowing the answer to that question?"

Before Wright could answer the latter question, the prosecutor objected, arguing that it was beyond the scope of redirect-examination. The court sustained the objection, and defense counsel did not ask any additional questions. Nor did defense counsel explain to the court why she attempted to ask Wright that question. Defense counsel simply stated, "Nothing further. Thank you, Judge." The court then excused Wright from the witness stand.

The defendant argues, for the first time on appeal, that the court deprived him of the opportunity to pursue *questions* on recross-examination regarding Wright's statements during the 911 call that would have challenged her credibility. He seeks review of his unpreserved constitutional claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[12]

"[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original; footnote omitted.) Id., 239–40, as modified in *In re Yasiel R.*, 317 Conn. 773, 780–81, 120 A.3d 1188 (2015).

The record is inadequate to review the defendant's constitutional claim. It is devoid of any indication as to what questions, if any, the defendant sought to ask Wright on recross-examination regarding her ability to describe the defendant's clothing that he could not have asked during cross-examination. See, e.g., *State* v. *Moye*, 214 Conn. 89, 98–99, 570 A.2d 209 (1990) (record inadequate to review defendant's confrontation clause claim because defendant did not question witness about how witness' arrest and subsequent detention had direct bearing on her credibility). Nor does the record indicate whether Wright "recall[ed] not knowing the answer" to the question asked by the 911 dispatch operator about the defendant's clothing. Accordingly, the defendant's claim fails the first prong of *Golding*.

We also decline to review the defendant's alternative

argument that the court abused its discretion under these circumstances. Appellate courts are "not bound to consider claims of law not made at the trial." (Internal quotation marks omitted.) *State* v. *Patterson*, 170 Conn. App. 768, 786, 156 A.3d 66, cert. denied, 325 Conn. 910, 158 A.3d 320 (2017); see also Practice Book § 60-5. On appeal, the defendant argues that his recross-examination was within the scope of redirect-examination because it "implicated [Wright's] ability to recall the events of [the evening]," which the prosecutor sought to bolster on redirect-examination. The defendant did not articulate this argument before the trial court. Accordingly, we will not review it on appeal.[13]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The state charged the defendant with two counts of tampering with a witness—counts three and four of the information. Count three focused on the defendant's conduct toward the victim, while count four focused on his conduct toward Wright. After hearing the evidence, the court found the defendant not guilty of count three.

[2] Aside from arguing that it presented sufficient evidence to sustain the defendant's conviction, the state also argues that we need not reach the merits of this claim because the court rendered a general verdict. Count four of the information charged the defendant with attempting to induce Wright "*either* to testify falsely or to withhold testimony," and, according to the state, the court did specify which theory the state proved beyond a reasonable doubt. Because we conclude that the state presented sufficient evidence to prove, beyond a reasonable doubt, that the defendant attempted to induce Wright to testify falsely, we do not reach the state's alternative argument.

[3] The defendant limits his argument to "the second portion of the tampering statute: whether [the defendant] attempted to induce . . . Wright to testify *falsely* by sending her a letter concerning the case." (Emphasis in original.) Accordingly, it is undisputed that the defendant believed that an official proceeding was pending.

[4] We limit our sufficiency of the evidence analysis to the way that the state tried the case and, accordingly, consider only the evidence that the state actually relied on to prove count four of the information. See, e.g., *State* v. *Carter*, 317 Conn. 845, 854–56, 120 A.3d 1229 (2015) (sufficiency analysis must be considered in conjunction with theory of case doctrine); *State* v. *Robert H.*, 273 Conn. 56, 81–84, 866 A.2d 1255 (2005) (same). Although the state argues on appeal that the trial court was free to consider the defendant's letter *to the victim* with regard to count four, we note that, at trial, the state's theory was that the defendant's letter *to Wright* proved count four.

[5] Our conclusion that the state proved, beyond a reasonable doubt, that the defendant attempted to induce Wright to testify falsely should not be read to suggest that a defendant lacks the right to urge a witness to support his theory of defense. That, however, is not what happened in this case. Notwithstanding Wright's previous statements to 911 dispatch and police identifying the defendant as the perpetrator, the defendant asked Wright to "tell them you not sure who it was" and to potentially testify in accordance with what the court reasonably could have considered a scripted, false alibi.

[6] Although the defendant claims that his rights under article first, § 8, and article second, as amended by article eighteen of the amendments, of the Connecticut constitution were violated, he has failed to provide an independent analysis under our state constitution. Accordingly, we deem his state constitutional claims abandoned. See, e.g., *State* v. *Bennett*, 324 Conn. 744, 748 n.1, 155 A.3d 188 (2017).

[7] The defendant, relying on *State* v. *Payne*, 303 Conn. 538, 34 A.3d 370 (2012), also claims that adding the witness tampering charges *in a single information* deprived him of due process by impermissibly "[flipping] the burden of joinder from the state to the defendant" and that the trial court abused its discretion when it allowed the charges to remain joined. See id., 548–50 (if charges are joined in single information, presumably because they are of " 'same character,' " defendant bears burden of proving that

charges should be tried separately, but if charges are set forth in different informations, presumably because charges are not of " 'same character,' " then state bears burden of proving that joinder is appropriate); see also General Statutes § 54-57; Practice Book § 41-19.

We decline to review these claims. The defendant did not specifically raise them at trial and did not file a motion to sever; see Practice Book § 41-18; rather, he filed a motion to dismiss, focusing his claim on whether adding the tampering with a witness charges violated the separation of powers doctrine. See, e.g., *State* v. *Snowden*, 171 Conn. App. 608, 614–19, 157 A.3d 1209 (defendant failed to preserve claim because his objection at trial to joinder of charges of murder, criminal possession of pistol or revolver, and attempt to tamper with witness was different from claim asserted on appeal), cert. denied, 326 Conn. 903, 163 A.3d 1204 (2017); see also Practice Book § 60-5.

To the extent that the defendant seeks review of these claims under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified in *In re Yasiel R.*, 317 Conn. 773, 780–81, 120 A.3d 1188 (2015), we are unpersuaded. Regardless of which party bore the burden of demonstrating that the charges should, or should not, have been tried together, or if the court abused its discretion by not ordering separate trials, the ultimate issue is whether the charges were properly joined in a single trial. "Whether multiple charges should be tried separately is within the court's sound discretion and generally is not of a constitutional nature." (Internal quotation marks omitted.) *State* v. *Madore*, 96 Conn. App. 235, 243, 899 A.2d 721, cert. denied, 280 Conn. 907, 907 A.2d 92 (2006); see also *State* v. *Payne*, supra, 303 Conn. 552–53 and 553 n.15 (joinder of separate informations is nonconstitutional); *State* v. *Berube*, 256 Conn. 742, 749 n.7, 775 A.2d 966 (2001) (claim that trial court improperly failed to sever charges stemming from two separate informations is nonconstitutional in nature). Although the defendant attempts to cloak the issue in the majestic garb of a due process violation, the ultimate issue— joinder of the charges—is nonconstitutional in nature. Accordingly, these claims fail the second prong of *Golding*. And because these claims fail the second prong of *Golding*, we need not reach the state's argument that the defendant waived any claim of improper joinder.

[8] Practice Book § 41-8 provides in relevant part: "The following defenses or objections, if capable of determination without a trial of the general issue, shall, if made prior to trial, be raised by a motion to dismiss the information . . .

"(4) Absence of jurisdiction of the court of the defendant or the subject matter;

"(5) Insufficiency of evidence or cause to justify the bringing or continuing of such information or the placing of the defendant on trial . . . ."

[9] On March 5, 2014, the defendant filed a motion to dismiss the charges against him pursuant to Practice Book § 41-8 (5) and General Statutes § 54-56. The defendant filed this motion prior to the addition of the witness tampering charges, but the record does not indicate whether the court ruled on this particular motion.

[10] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

[11] Because the defendant did not argue that the trial court's ruling deprived him of his sixth amendment right to confrontation, he seeks review of his unpreserved constitutional claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified in *In re Yasiel R.*, 317 Conn. 773, 780–81, 120 A.3d 1188 (2015).

[12] It is well established that "[t]he sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . ." (Internal quotation marks omitted.) *State* v. *Beverley*, 169 Conn. App. 689, 701, 151 A.3d 854 (2016), cert. denied, 324 Conn. 924, 155 A.3d 755 (2017); accord *State* v. *Annulli*, 309 Conn. 482, 491–92, 71 A.3d 530 (2013).

[13] Even if this evidentiary argument was properly before us, we would reject it on the merits. The trial court enjoys "a considerable latitude" in controlling the extent of cross-examination and recross-examination, and we review the court's ruling for an abuse of discretion. See, e.g., *State* v. *Gould*, 127 Conn. App. 354, 359, 14 A.3d 1032 (2011). On the basis of our review of the record, we would conclude that the court did not abuse its discretion in ruling that the defendant's question was outside the scope of redirect-examination. None of the prosecutor's questions on redirect-

examination dealt with the 911 recording.

---